1251. SEABOARD AIR-LINE RAILWAY *v.* MILLER.

1. A verdict in one of that class of cases in which the amount of damages is left to the enlightened conscience of the jury is not to be declared by a reviewing court to be excessive, unless it is so large in amount as to justify the court in believing that it could not reasonably have resulted from any other cause than bias or gross mistake on the part of the jury.

2. No reason appears for granting a new trial.

Action for damages, from city court of Atlanta—Judge Reid. May 13, 1908.

Argued July 17,—Decided October 26, 1908.

· Rehearing denied January 16, 1909.

*Brown & Randolph,* for plaintiff in error.

*Atkinson & Born,* contra.

POWELL, J. Miller sued the railway company for damages resulting from a negligent injury, in which both of his legs were cut off. He recovered a verdict of $25,000, which the trial judge expressly approved, as being, in his opinion, not excessive under the circumstances. In this court it was practically conceded that the evidence was such as to authorize the jury to find that the defendant was negligent, and that the plaintiff was entitled to recover in some amount, the chief insistence being that the verdict is excessive. At the time of the injury the plaintiff was twenty-one years old, was a locomotive fireman, and was earning $1.75 per day. He experienced great pain and suffering.

The power of this court to set aside a verdict on the ground that it is excessive is contained in, and is limited by, section 3803 of the Civil Code, which reads as follows: "The question of damages being one for the jury, the court should not interfere, unless the damages are either so small or so excessive as to justify the inference of gross mistake or undue bias." This is a different power from that exercised by the judge of the trial court in reviewing the verdict on a motion for a new trial. *Holland* v. *Williams,* 3 *Ga. App.* 636 (60 S. E. 331). In cases such as this, the amount of the damages is to be determined solely (except so far as the trial judge has power to review the verdict) by the enlightened conscience of the jurors trying the case, provided only that they are impartial and that they have not acted under some gross mistake. The presumption is that the jurors were impartial and that they understood the case before them. If the verdict is so large that either by the very size alone, or by the size taken in connection with the other circumstances appearing, the reviewing court is justified in saying the jury was not impartial or the verdict was induced by a mistake, the presumption is overcome, and the verdict is set aside; for, of course, a verdict rendered by a prejudiced jury, or by a fair jury as the result of a mistake, is not a legal verdict.

The question is, how is this bias or this mistake to be shown? Sometimes it may be shown directly, but this is rarely so. Usually it is a matter of inference; and in that event the solution falls within the rule as to circumstantial evidence,—there must be no

reasonable hypothesis other than that the bias or the mistake did exist. Sometimes the verdict is so very large as to present a phase of res ipsa loquitur. At common law it was long doubted that judges had the right to set aside verdicts and to grant new trials; and almost as early as this right was established, the power to set aside a verdict as being excessive was recognized. The one proposition has the other as a corollary. In Chambers *v.* Robinson (1739), 1 Strange, 691, the court awarded one new trial because the verdict in a case for malicious prosecution was excessive, but refused a second grant where the same amount—one thousand pounds—was returned by another jury. In Wilford *v.* Berkeley (1758), 1 Burr. 609, the report states that "the court were, all three, clear and unanimous, that although there was no doubt of the power of the court to exercise a proper discretion in setting aside verdicts for excessiveness of damages, in cases where the quantum of the damages really suffered by the plaintiff could be apparent, or they were of such a nature that the court could properly judge of the degree of the injury, and could see manifestly that the jury had been outrageous in giving such damages as greatly exceeded the injury; yet the case was very different where it depended upon circumstances which were properly and solely under the cognizance of the jury, and were fit to be submitted to their decision and estimate." In Leeman *v.* Allen (1763), 2 Wils. 160, the court was asked to set aside a verdict in a case of tort, on the ground that it was excessive. The court discharged the rule, saying, through the Chief Justice, "As to the excessiveness of damages, courts should be very cautious how they overthrow verdicts that have been given by twelve men on their oaths; however, if damages be unreasonable and outrageous indeed, as if 2000*l.* or 3000*l.* was to be given in a little battery, which all mankind might see to be unreasonable at first blush; certainly a court would set aside such a verdict, and try whether a second jury would not be more reasonable. The rule in the case of Ash *v.* Ash, Comb. 357, laid down by Lord Holt, is a good one: 'The jury are to try causes with the assistance of the judges, and ought to give their reasons when required, that if they go upon any mistake they may be set right;' and for their not doing so, and for excessiveness of damages, a new trial was granted. And this rule is universal and extends to all sorts of actions. But it may be said, what rule has the court to govern themselves by as to

matters of tort? I answer, the court must be able to say the damages are beyond all measure unreasonable, though they can not say exactly what damages ought to be given." In Huckle v. Money (1763), 2 Wils. 205, upon a similar motion, the court said, "it is very dangerous for the judges to intermeddle in damages for torts; it must be a glaring case indeed of outrageous damages in a tort, and which all mankind at first blush must think so, to induce a court to grant a new trial for excessive damages." In Beardmore v. Carrington (1763), 2 Wils. 244, the case of Chambers v. Robinson, supra, was severely criticised, so far as it granted the first new trial, and the court, after a long review of cases, in which it showed that the judges had declined to declare a verdict of four thousand pounds excessive in a slander suit, concludes, "We desire to be understood that this court does not say, or lay down any rule that there never can happen a case of such excessive damages in tort where the court may not grant a new trial; but in that case the damages must be monstrous indeed, and such as all mankind must be ready to exclaim against, at first blush." In Gilbert v. Burtenshaw (1774), 1 Cowp. 231, Lord Mansfield said, in behalf of the court: "The whole ground of the application rests on the point of excessive damages. I should be sorry to say, that in cases of personal torts no new trials should ever be granted for damages, which manifestly show the jury to have been actuated by passion, partiality, or prejudice. But it is not to be done without very strong grounds indeed, and such as carry internal evidence of intemperance in the minds of the jury. It is by no means to be done where the court may feel that if they had been on the jury they would have given less damages, or where they might think the jury themselves would have completely discharged their duty in giving a less sum. Of all the cases left to a jury, none is more emphatically left to their sound discretion than such a case as this; and unless it appears that the damages are flagrantly outrageous and extravagant, it is difficult for the court to draw the line."

In our adoption of the common law and in our adaptation of it to our judicial system, we have applied these principles to the right of our courts of final review to grant new trials for excessiveness in verdicts. The code section (3803) is merely declaratory. These courts—the Court of Appeals and the Supreme Court—have the power, but must not exercise it unless the verdict is shown to be

the result of bias or gross mistake, or shows itself to be so. If the damages are "monstrous indeed, and such as all mankind must be ready to exclaim against, at first blush," or (we may add, after mature deliberation), if the thing speaks for itself, the verdict must be considered as the result of bias or mistake, for there is no other reasonable hypothesis.

Many American courts, in testing verdicts for excessiveness, have compared them with verdicts rendered by juries in similar cases. See Standard Oil Co. *v.* Tierny, 92 Ky. 367 (17 S. W. 1025, 14 L. R. A. 677, 36 Am. St. R. 595), s. c. 96 Ky. 92 (27 S. W. 983); Lockwood *v.* Street R. Co., 15 Daly (N. Y.), 374 (7 N. Y. Supp. 663). The fact that a verdict is greatly larger in amount than the sums fixed usually by juries in similar cases is evidentiary as to bias or mistake, but is not conclusive.

If the verdict is very large, and it appears that on the trial there was some slightly erroneous action which was trifling enough to be considered ordinarily as harmless, but which might have misled the jury or have given them a biased or an erroneous conception of the case, the court will, with little reluctance, set the verdict aside. The size of the verdict being itself a circumstance which suggests the possibility of bias or mistake, the reviewing court scans the record closely, to see if this suspicion finds corroboration in any cause that might have induced such a result. *Ransone* v. *Christian,* 49 *Ga.* 491; *Western & A. R. Co.* v. *Young,* 83 *Ga.* 512 (2), 516 (10 S. E. 197). The Supreme Court and this court have both frequently applied this principle, and it is thoroughly familiar to the bar. In the *Young* case, just cited, there is an oft-quoted obiter by the greatest master of judicial logic this State has ever known (Judge Bleckley, of course), which is, nevertheless, so palpably fallacious as to justify even a judicial tyro, such as I, to comment upon it. His statement is as follows: "In the absolute sense, damages equivalent to all the assets of the railroad company might not be excessive, nor even adequate, for a serious personal injury resulting from its negligence, but in any practical sense, the damages in each case must be graduated so that there may be railroads left in existence, and so that all like injuries occasioned by their use may be compensated in some reasonable degree. For a few injured persons to recover amounts not so graduated would perhaps in the end leave nothing with which to com-

pensate others having claims equally strong and meritorious." The ability of the defendant to pay certainly can not be a consideration in determining the amount of damages which, in theory at least, are compensatory. The fact that a defendant may be poor is no reason why the plaintiff should not recover the full amount of his lawful demand against him. Except in bankruptcy proceedings and in similar distributions to creditors where the maxim "equality is equity" is applicable, the courts never limit the amount of a plaintiff's recovery on the ground that to allow him full compensation might defeat some other creditor, existent or prospective. If this were the rule, a plaintiff whose arm was cut off in a small sawmill by the negligence of the proprietor would be entitled to recover a judgment for a very small amount, if it should appear that the proprietor of the sawmill was worth but say $1,000. Under the theory stated, the plaintiff could not have judgment for as much as the $1,000, for some one else might be injured by the same mill, and the first recovery would exhaust the assets. This position is, of course, untenable. The general thought announced by the great Chief Justice, in connection with which he used the expressions quoted, is absolutely sound,—that corporations should be treated fairly, and that in a court of justice they should not be subjected to the effects of the slightest prejudice; but the particular reason quoted must be unsound.

We have scanned the record before us with care. The trial was lengthy, the evidence was voluminous; and yet there is not a single exception taken either to the admission or the rejection of testimony. There are a few exceptions to the charge of the court, but none of them are meritorious. The charge was full, fair, and comprehensive. Nothing, save only the size of the verdict itself, suggests the slightest possibility of the introduction of bias or mistake into the jury box. On the hearing of the motion for a new trial, the whole record was before the trial judge; and, not merely by that implied approval which would arise from the act of refusing the motion, but in an opinion filed, he has expressed himself as being satisfied that the verdict is not too large. The jury saw the plaintiff, heard his agonies described, probably considered, as they had the right to consider, that he would suffer in the future and would endure "mortification and anguish . . by reason of the mutilation of his body and the fact that he may become an

object of curiosity or ridicule among his fellows." (See Heddles v. Chicago Ry. Co., 77 Wis. 228, 46 N. W. 115, 20 Am. St. Rep. 106, in which a boy was given $18,500 for the injury of having his legs cut off, and the verdict was sustained.) We recognize that the verdict is larger in amount than any of the juries in this State have previously awarded for personal injuries, so far as the reports show; but this was perhaps as serious an injury as has ever been before the courts of this State. It must be remembered, too, that owing to the low purchasing power of money at the present time, every dollar awarded a few years ago afforded as much compensation as do two dollars now. After mature deliberation, we are unwilling to say that the verdict was the result of bias or mistake. We may say, too, that we are personally as well as judicially satisfied. The express approval of the verdict by Judge Reid leads us to believe that the amount was not excessive; for we personally know how fairly and cautiously, but fearlessly, he exercises his discretion in such cases. Judicially we give to his approval no higher weight than we would to that of any other judge in the State, but personally we recognize that as a trial judge he possesses an excellence of discretion, unequalled by a majority of those holding similar positions, and this frank statement is no disparagement to the other judges upon our trial bench.

2. None of the exceptions are well founded.

*Judgment affirmed.*