A96A1268. SOUTHEASTERN SECURITY INSURANCE
COMPANY v. HOTLE.
(473 SE2d 256)

JOHNSON, Judge.

A jury agreed with plaintiff Nicole Hotle that she had been subjected to a hostile work environment and was a victim of sexual harassment while working for Southeastern Security Insurance Company. They assessed general damages of $1 and punitive damages in the amount of $45,000 against Southeastern, and general damages of

$1 and punitive damages in the amount of $20,000 against Southeastern's employee, James Alexander. Southeastern appeals.

1. Southeastern complains that the trial court erred in failing to grant Alexander's motion for directed verdict as to Hotle's intentional infliction of emotional distress claim; in denying Southeastern's motion for directed verdict as to punitive damages; in denying Southeastern's motion for new trial because the verdict was contrary or against the weight of the evidence and because the trial court allowed the admission of irrelevant and prejudicial evidence; and in denying Southeastern's motion for j.n.o.v. on the issue of damages. Because the standard of review on appeal following a jury's verdict, the "any evidence" or "some evidence" rule, is the same for all of these allegations of error we will consider them together. "Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence. . . . The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. As long as there is some evidence to support the verdict, the denial of defendant's [motion] for [directed verdict,] new trial and j.n.o.v. will not be disturbed." (Citations and punctuation omitted.) *Willis v. Brassell*, 220 Ga. App. 348 (469 SE2d 733) (1996).

Viewed in this light, the evidence supports the facts as follows. Hotle, then 19 years old, went to work for Southeastern as a data entry clerk. Hotle worked for three months, under three different supervisors, without incident. Then, Alexander, vice president of Southeastern, and nephew of the company's owner, became her supervisor. In conjunction with her job duties, Hotle reported to Alexander regularly on Monday mornings. On those occasions, Alexander would ask Hotle questions such as: "Did you get laid this weekend?" or "Did you get stuck this weekend?" or "Did you have a two-on-one this weekend?" Alexander once asked Hotle to bring him a cup of coffee, holding it between her legs and walking on her hands. He referred to Hotle and the other female employees as his "bitches." Alexander's comments were not always directed at Hotle, but were made in her presence. When Alexander overheard one employee ask another to stick a document in the file room, he commented that he would "stick you in the file room." Alexander once asked an employee if she would like to "try him out" and compare him with her husband. The same former Southeastern employee testified that she heard comments of a sexual nature almost daily. Alexander admitted on cross-examination that another Southeastern manager opined on one occasion that Hotle and one of the other female employees could "use

a good hard f___." On another occasion, as a female employee answered the phone "May I help you?" a manager stated: "Yeah, get down on your knees." Hotle testified that she tried to discourage this type of behavior, and she and others complained to management that they found this behavior offensive and upsetting.

(a) In order to sustain a claim of intentional infliction of emotional harm in a sexual harassment case, a "plaintiff must show 1) that defendant's behavior was wilful and wanton or intentionally directed to harming plaintiff; 2) that the actions of defendant were such as would naturally humiliate, embarrass, frighten, or outrage the plaintiff; 3) that conduct caused mental suffering or wounded feelings or emotional upset or distress to plaintiff." *Coleman v. Housing Auth. of Americus*, 191 Ga. App. 166, 170 (1) (381 SE2d 303) (1989). Because some evidence was presented which would satisfy all three prongs of that test, the trial court properly denied Alexander's motion for directed verdict on the intentional infliction of emotional harm claim. See generally *Shaw v. Ruiz*, 207 Ga. App. 299, 303 (428 SE2d 98) (1993).

(b) Likewise, there was ample evidence from which the jury could conclude that Southeastern, through the actions of its president and other management personnel, participated in the perpetuation of a hostile work environment, and exhibited a total want of care. The denial of Southeastern's motion for directed verdict as to punitive damages was not error. Southeastern's reliance on *Troutman v. B. C. B. Co.*, 209 Ga. App. 166, 168 (2) (433 SE2d 73) (1993) is misplaced. In this case there was evidence from which a jury could conclude that harassment was institutionalized at Southeastern, starting with the actions of its president and pervading the company. Thus the jury had evidence before it from which it could conclude that the company evinced a total want of care, raising an inference of a conscious indifference to the consequences.

(c) Similarly the trial court did not err in denying Southeastern's motion for new trial on general grounds because evidence was presented in support of Hotle's claims that Southeastern negligently retained Alexander and failed to keep its workplace free of sexual harassment. See *Rogers v. Carmike Cinemas*, 211 Ga. App. 427 (439 SE2d 663) (1993).

(d) Southeastern's assertion that the trial court erred in failing to grant its motion for new trial because the trial court allowed the admission of irrelevant or prejudicial evidence is likewise without merit. "Unless the potential for prejudice in the admission of evidence substantially outweighs its probative value the Georgia rule favors the admission of any relevant evidence, no matter how slight its probative value. Evidence of doubtful relevancy or competency should be admitted and its weight left to the jurors. Where evidence

is offered and objected to, if it is competent for any purpose, it is not erroneous to admit it. Absent a manifest abuse of discretion, a court's refusal to admit evidence on grounds of lack of relevance will not be disturbed on appeal." (Citations and punctuation omitted.) *Wilson v. Southern R. Co.*, 208 Ga. App. 598, 604 (4) (431 SE2d 383) (1993). Because evidence of comments made to employees other than the plaintiff in this case is directly relevant to Hotle's work environment, such evidence was relevant and was properly admitted. That the evidence was prejudicial to Southeastern does not render it inadmissible. The prejudicial effect of the evidence did not outweigh its probative value and the trial court did not err in admitting it.

(e) Finally, the trial court did not err in denying Southeastern's motion for j.n.o.v. Southeastern argues that the awards for general damages and punitive damages constitute an impermissible double recovery. See *Waldrip v. Voyles*, 201 Ga. App. 592, 594-596 (2) (411 SE2d 765) (1991). The jury awarded Hotle $1 from Alexander and $1 from Southeastern. The specially drafted verdict form, which neither party excepted to, did not specify which of the several underlying causes of action which were pled formed the basis of that award. "Presumptions favor the validity of verdicts and a construction, if possible, will be given which will uphold them." *Adams v. Smith*, 129 Ga. App. 850, 853 (5) (201 SE2d 639) (1973). The trial court did not err in denying Southeastern's motion for j.n.o.v. on this ground.

Southeastern also argues that the denial of its motion for j.n.o.v. was error because the amount of the award for punitive damages was disproportionate to the amount awarded for general damages. We do not look to a mechanical formula to establish the relationship between general and punitive damage awards. Rather, we look to the evidence to determine whether there was support for the jury's verdict. "Punitive damages are not compensation for injury. Instead, they are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence. . . . A deterrence award is based on factors, for the most part, unrelated to the injury to any particular victim, and is limited only by the collective conscience of the jury." (Citations and punctuation omitted.) *Hosp. Auth. of Gwinnett County v. Jones*, 259 Ga. 759, 762 (2) (386 SE2d 120) (1989). "[T]he notion that punitive damages must necessarily bear some relationship to the *actual* damages awarded by the jury has been rejected in this state. However this relationship may be considered on the issue whether the punitive damage award is excessive due to undue passion and prejudice." (Citation and punctuation omitted.) *Oglethorpe Power Corp. v. Sheriff*, 210 Ga. App. 299, 301-302 (4) (c) (436 SE2d 14) (1993). We do not find the trial court's conclusion that the award in this case was based on evidence rather than undue passion and prejudice to be clearly erroneous.

Neither do we believe that the U. S. Supreme Court's recent decision in *BMW of North America v. Gore*, ___ U. S. ___ (116 SC 1589, 134 LE2d 809) (1996) demands a different result here. In that case, the Alabama Supreme Court adjusted a jury's punitive damage award to $2 million in a case in which BMW did not disclose to a purchaser that a vehicle, marketed as new, had been repainted. The Supreme Court accepted certiorari in that case to explore the character of the standard that will identify constitutionally excessive punitive damage awards. The inquiry begins with an identification of the state interest that the punitive damage award is designed to serve. In the *BMW* case the state interest is the protection of consumers from questionable trade practices. Here, the state interest is to protect women from being subjected to harassment in the workplace. The inquiry continues with an evaluation of how reprehensible the conduct was. The Supreme Court concluded that none of the aggravating factors associated with particularly reprehensible conduct was present in a case where repainting a car was not disclosed to a purchaser. Here, the jury found that the behavior to which Hotle was subjected was degrading and reprehensible. And although the Supreme Court found the ratio of the compensatory damage award to the punitive damage award to be suspect in the *BMW* case, it once again reiterated its rejection of a categorical approach to the calculation of damages.

The state has a compelling interest in deterring the reprehensible conduct to which Hotle was subjected while an employee at Southeastern, and although the relationship between the compensatory and punitive damages awarded here is unbalanced, the jury spoke and the trial court, which also heard the evidence, did not find the award excessive. The trial court did not abuse its discretion in refusing to grant Southeastern's motion for j.n.o.v.

2. The trial court did not err in denying Southeastern's motion to reduce the punitive damage award. A trial court should not interfere with the amount of damages awarded by a jury unless they are so clearly inadequate or so excessive as to be inconsistent with the preponderance of the evidence in the case. OCGA § 51-12-12. "An excessive or inadequate verdict constitutes a mistake of fact rather than of law. It addresses itself to the discretion of the trial judge who saw the witnesses and heard the testimony. This court is a court for the correction of errors of law only, and this court's jurisdiction is confined to the question of whether the trial court abused [its] discretion in overruling the motion [for reduction of damages] on this ground." *St. Paul Fire &c. Ins. Co. v. Dillingham*, 112 Ga. App. 422, 425 (145 SE2d 624) (1965). The trial court's refusal to reduce the jury's award was not an abuse of discretion and we find no error.

3. The trial court instructed the jury that "[i]n order for punitive

damages to be awarded, the plaintiff must prove by clear and convincing evidence that the defendants' actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." Southeastern now complains that the trial court erred in failing to define the clear and convincing standard of proof for the jury. Southeastern's argument that it was error not to define clear and convincing is well-taken. See *Clarke v. Cotton*, 263 Ga. 861 (440 SE2d 165) (1994). Unfortunately for Southeastern, however, this case is too similar to the case upon which it relies to be of benefit. As in *Clarke*, "counsel for the defendants acquiesced in the trial court's instructions. . . . Accordingly, the defendants have waived any claim that the trial court's error in its charge was harmful." Id. at 863. Southeastern never requested a charge defining the clear and convincing standard and failed to except to the charge on the basis that the definition was not given. This issue, then, raised for the first time in this appeal, has been waived. "An alleged error raised for the first time on appeal will not be considered by this court. [Cit.]" *Cora v. Wagner*, 196 Ga. App. 774, 775 (2) (397 SE2d 46) (1990).

*Judgment affirmed. McMurray, P. J., and Ruffin, J., concur.*

DECIDED JULY 9, 1996.

*Hertz & Link, Eric J. Hertz, Houston D. Smith III, Harvey G. Berss*, for appellant.

*Gill, Peterson & Harris, Allen F. Harris, Mark A. Thompson*, for appellee.