S97A1408. MOODY v. DYKES et al.
S97A1409. MOODY v. DYKES et al.

(496 SE2d 907)

HINES, Justice.

These appeals challenge a judgment for damages under OCGA § 51-12-6 in an action for the continuing trespass of burial plots. For the reasons which follow, we affirm the judgment entered on the jury's verdict for plaintiffs and the denials of the defendants' motions for new trial and for judgment notwithstanding the verdict.[1]

The evidence construed in favor of the verdict showed the following. When Phyllis Dykes died on April 16, 1994, her husband, George Dykes, wanted to have her buried next to members of his family in the small rural church cemetery where three generations of his family had been interred. The church did not maintain any written records regarding ownership of the burial plots, and the recipient of a cemetery lot was responsible for marking it. The church maintained control of the unmarked lots. Dykes and his children went to the cemetery and observed an unmarked area, large enough to accommodate four graves, in line with existing burial sites for the Dykes family. A representative of the family then met with a member of the church's cemetery committee to confirm that the selected site was unowned and available. The church allowed the Dykes family to claim ownership of the lot, and Phyllis Dykes was buried there.

Shortly thereafter, Zell Moody learned of the interment. The Moodys also historically buried their dead in the church cemetery, and around 1958, had placed an inscribed 14-foot-long marble headstone in the graveyard. The Moodys claimed that the church had given them a family burial lot in a "T" shaped configuration, to the east and west of the headstone, which included the lot given to the Dykes family and the gravesite for Phyllis Dykes. The church did not agree that the area in question had ever been marked as belonging to the Moodys or that it had mistakenly been given to the Dykes family; however, Zell Moody directed a member of the cemetery committee to contact George Dykes to request that he have his wife's body moved to another location. The widower refused. Thereafter, Zell Moody placed burial slabs for two of his brothers (there were no bodies placed in the gravesites) on the two unoccupied plots adjacent to Phyllis Dykes' grave in order to prevent the Dykes family from putting a headstone on Phyllis Dykes' grave or from further marking the burial lot. Gene Moody, Zell's brother, oversaw the placement of the new Moody burial slabs.

---

[1] In Case No. S97A1408, defendant Zell Moody appeals from the adverse judgment. Case No. S97A1409 is defendant Gene Moody's appeal from the judgment following trial and the unfavorable rulings on his post-trial motions.

Mr. Dykes and his children discovered what the Moodys had done on the following Mother's Day when they went to the cemetery to pay their respects to the wife and mother they had lost. The Dykes family became upset that it would be unable to complete the marking of Phyllis Dykes' grave, and Mr. Dykes, who was nearing the typical longevity of the men in his family, was fearful that he would not be able to be laid to rest alongside his wife. Mr. Dykes and his two sons and daughter filed the present action against Zell Moody and Gene Moody seeking injunctive relief and damages for injury to their peace, happiness, and feelings caused by the Moodys' continuing trespass on the burial lot. At the jury trial, which was bifurcated on the issues of liability and damages, members and representatives of the church testified that there were no "T" shaped lots in the church cemetery. The jury was taken to the cemetery to view the property.

The jury returned a special verdict in favor of the Dykeses, giving them exclusive title, possession, and use of the plots at issue, ordering the Moodys to move the two grave slabs they had placed there, and awarding $150,000 in damages to Mr. Dykes and $75,000 in damages to each of Dykes' three children.

1. The Moodys fail in their contentions that the trial court committed reversible error by excluding critical evidence regarding the boundaries of the Moody burial lot. The court sustained hearsay objections to testimony about statements of Robert Miles, the deceased operator of the local funeral home. Even assuming that the statements attributed to Robert Miles were admissible under the exceptions to hearsay found in OCGA § 24-3-9 or in § 24-3-13, the trial court's rulings fail to provide a basis for reversal.

David Miles, Robert Miles' son and owner of the funeral business, testified that he knew where the Moody burial lot was and that there were Moody plots on both sides of the Moody monument. Plaintiffs' hearsay objection came when David Miles was asked how long he had known about plots on either side of the monument, and he responded, "As far as I — I've known since about 1975, but my dad has always told me." The court sustained the objection, but did not strike Miles' answer or instruct the jury to disregard the testimony. In fact, Miles was allowed to further testify that he had personal knowledge of the situation. The trial court later sustained the same hearsay objection to similar statements involving decedent Miles related in the deposition of Frances Page, whose family burial lot adjoined the Moody plots. However, here again the jury heard the witness testify to the same effect but out of personal knowledge, and the court allowed enough testimony involving Robert Miles to convey that the former funeral director's opinion supported the Moodys' claim. As evidence of the same import was admitted, any limitation on relating information obtained from the deceased failed to result in

harm to the Moodys. *Yuscavage v. Jones*, 213 Ga. App. 800, 801 (1) (446 SE2d 209) (1994).

2. Gene Moody is unsuccessful in his assertion that the trial court erred in failing to grant him a directed verdict or judgment notwithstanding the verdict because there was no evidence of damages under OCGA § 51-12-6. By overseeing the placement of the new burial slabs, Gene was an integral part of the plan to intentionally defy the grant of ownership of the plots to the Dykes family and to thwart any further attempt by the Dykeses to exercise dominion or control over the gravesites. The evidence allowed the jury to find that the Moodys acted wilfully and maliciously and that their actions were expressly directed against the Dykes family. *Ryckeley v. Callaway*, 261 Ga. 828 (412 SE2d 826) (1992). As to the contention that there was no evidence of injury to the peace, happiness, or feelings of Phyllis Dykes' sons, there was testimony of the continuing effect of the Moodys' acts on the whole family. The evidence was that it became emotionally difficult for Mr. Dykes and his children to visit the gravesite, as their inability to complete a memorial to Phyllis Dykes prevented any healing process following her death.

3. The Moodys fail in their challenges to the trial court's allowing, in the damages phase, evidence of their worldly circumstances, and to its instructing the jury that worldly circumstances should be weighed in reaching a verdict.[2] Former OCGA § 51-12-6 expressly provided that in an action for injury to the peace, happiness, or feelings of the plaintiff, the worldly circumstances of the parties, the amount of bad faith in the transaction, and all attendant facts were to be weighed. The 1987 amendment to the statute deleted the express list of factors to be considered by the jury, and added the statement that punitive damages under OCGA § 51-12-5 or § 51-12-5.1 would not be awarded. However, in this case, the Moodys' own actions at trial placed evidence of their worldly circumstances before the jury.

In a civil case, a party may not be heard to complain of the giving or the failure to give a jury instruction unless the party objects before the jury returns its verdict and distinctly states an objection and the grounds for it. OCGA § 5-5-24 (a). See *Glisson v. Glisson*, 265 Ga. 239, 240 (3) (454 SE2d 508) (1995). The failure to except before verdict, generally is a waiver of any defects in a charge absent a substantial error blatantly apparent and prejudicial, resulting in a gross miscarriage of justice. OCGA § 5-5-24 (c); *Pope v. Goodgame*, 223 Ga. App. 672, 675 (3) (c) (478 SE2d 636) (1996). But, even the review of

---

[2] In the damages phase, the court gave the pattern charge for OCGA § 51-12-6 which allowed the jury to consider, among other things, the worldly circumstances of the parties.

substantial error under OCGA § 5-5-24 (c) is not available when the giving of an instruction, or the failure to give an instruction, is induced during trial by counsel for the complaining party or specifically acquiesced in by counsel. *Irvin v. Oliver*, 223 Ga. 193, 196 (2) (154 SE2d 217) (1967). See also *Stevens v. Stevens*, 227 Ga. 410, 413 (4) (181 SE2d 34) (1971).

Counsel for the parties participated in a charge conference at which all objections were discussed. At the conclusion, the Moodys' counsel stated, "All right. Well, then, I won't — with that, I won't object to anything. I'll accept it all." Upon inquiry by the court at the conclusion of the court's instruction in the liability phase, counsel affirmed that the Moodys had no objection to the charge as given. Following the verdict on liability, the court informed the parties that it would proceed with the trial of damages, and after the presentation of evidence, would give its complete charge on damages, which was the pattern charge allowing consideration of the parties' worldly circumstances. The court asked if there were any objections to proceeding in this manner, and the Moodys' counsel stated that there were none. Counsel for both sides then conferred about the Moodys' financial records which were to be put in evidence. The Moodys' attorney expressed only the concern that the documents be sealed after the proceeding. The jury returned and heard evidence consisting principally of the Moodys' business holdings and finances. The court then charged the jury regarding damages. At the conclusion, counsel for the Moodys again stated that there were no objections to the charge.

These facts compel the conclusion that the Moodys expressly acquiesced[3] in both the court's instruction on worldly circumstances and in the jury's consideration of them.[4] Moreover, it is basic that evidence cannot be contested for the first time on appeal. *Black v. Johnson*, 233 Ga. 533 (1) (212 SE2d 368) (1975). Nor can a party induce error and then benefit from it. *Dodd v. Dodd*, 224 Ga. 746, 747 (164 SE2d 726) (1968).

4. The Moodys also urge that the trial court committed reversible error in failing to charge the jury on proximate cause and that the defendants' conduct must be found to be malicious, wilful or wanton and directed at the plaintiffs before there could be recovery under OCGA § 51-12-6. See *Ryckeley*, supra; *Westview Cemetery v.*

---

[3] In brief, Gene Moody urges that acquiescence should not be imputed to him because of a conflict of interest in counsel's representation of both brothers; however, the propriety of the joint representation is not at issue in this appeal.

[4] Gene Moody also maintains in his reply brief that plaintiffs' closing argument was illegal because it urged the consideration of worldly circumstances; however, he failed to lodge any objection to the argument.

*Blanchard*, 234 Ga. 540, 544 (B) (216 SE2d 776) (1975). However, review of the court's charge in the liability phase reveals that it instead instructed the jury on direct causation, because the intentional act of trespass was at issue. Also, the court instructed on wilful, malicious, or wanton conduct relating to defendants' "acts upon the plaintiffs."[5] In any event, the Moody's failure to object to the court's instruction in these matters precludes their challenge. See Division 3, supra.

5. Gene Moody's complaints about the special verdict form given to the jury are unavailing. He did not object in any manner to it. *Ray v. Stinson*, 254 Ga. 375 (329 SE2d 502) (1985). What is more, his own proposed verdict form was structured in the manner he now claims was error. It too allowed for findings of only joint liability with Zell Moody, required that the jury decide ownership of the burial plots at issue in conjunction with a decision on plaintiffs' entitlement to damages for wounded feelings, and requested that the jury make a determination of whether Phyllis Dykes' body should be exhumed.

6. Lastly, Gene Moody does not prevail in his contention that the trial court erred in failing to set aside the verdict as contrary to the weight of the evidence, for we have determined that there was evidence sufficient to support the plaintiffs' verdict. See Division 2, supra. Nor can he successfully claim that the verdict is excessive as obviously the result of gross mistake or undue passion stemming from the jury's consideration of Zell Moody's worldly circumstances. Both Moodys fostered the jury's consideration of these circumstances. See Division 3, supra.

What is more, the focus of OCGA § 51-12-12, under which the award is being reviewed, is to allow the *trial court* to interfere with a jury verdict in two opposite situations — where the award is so inadequate or so excessive as to be contrary to the preponderance of the evidence. By doing so, the statute implements a prime legislative purpose of the tort reform act by sparing the parties and the courts the delay and expense of another trial and bringing the litigation to an expeditious but reasonable conclusion. *Lisle v. Willis*, 265 Ga. 861, 863 (1) (463 SE2d 108) (1995). Moreover, an excessive or inadequate

---

[5] In addition to giving several charges on trespass, the court instructed:

"I further charge you that if you find that the defendants in this case exercised an entire want of care in their actions which would raise the presumption of a conscience indifference to the consequences of their acts upon the plaintiffs, then such entire want of care is the equivalent of the defendant's willfully causing such consequences.

"I charge you that an act may be malicious, not because of personal hate or ill-will, but because of the state of mind which is reckless of law and of the legal rights of citizens.

"I charge you that wanton conduct is that which is so reckless or so charged with indifference to the consequences of the conduct that is equivalent in spirit to an actual intent to cause the injuries that result from the conduct."

verdict is a mistake of fact rather than of law and addresses itself to the discretion of the trial judge who, like the jury, saw the witnesses and heard the testimony. *Southeastern Security Ins. Co. v. Hotle,* 222 Ga. App. 161, 165 (2) (473 SE2d 256) (1996). In fact, the trial court's approval of the verdict creates a presumption of correctness which is not to be disturbed absent compelling evidence. *Brown v. Southern Aggregates Co.,* 207 Ga. App. 886, 888 (1) (429 SE2d 294) (1993); *Peterson v. First Franklin Financial Corp.,* 201 Ga. App. 849, 850 (412 SE2d 612) (1991). Here, the trial court has passed upon the propriety of the verdict for plaintiffs at least five times — in entering judgment on the verdict and on the Moodys' two motions for new trial and two motions for judgment notwithstanding the verdict.

Of course, the appellate court may set aside a jury verdict under OCGA § 51-12-12 (a), but the threshold is extremely high. See *Hosp. Auth. of Gwinnett County v.* Jones, 259 Ga. 759, 766 (5) (b) (386 SE2d 120) (1989). See also *Brown v. Southern Aggregates Co.,* supra at 888 (1); *Turpin v. Worley,* 206 Ga. App. 341, 343 (1) (425 SE2d 895) (1992). Our role is "not . . . to 'enter the jury box.'" *Robinson v. Star Gas,* 269 Ga. 102, 103 (498 SE2d 524) (1998). The jury made its award in its enlightened conscience and based upon the evidence agreed to by all concerned. Its verdict stands.

*Judgments affirmed. All the Justices concur.*

DECIDED MARCH 16, 1998 —
RECONSIDERATION DENIED APRIL 1, 1998.

*Davis, Gregory, Christy & Forehand, Hardy Gregory, Jr., Fellows, Johnson, Davis & LaBriola, C. Michael Johnson, Henry M. Quillian, Shawn M. Willette,* for appellants.

*Ken W. Smith, William K. Blackstone,* for appellees.