A00A0120. TIME WARNER ENTERTAINMENT COMPANY, L.P. et al. v. SIX FLAGS OVER GEORGIA, LLC et al.

(563 SE2d 178)

ELLINGTON, Judge.

This is the second appearance of this case before this Court. On July 13, 2000, we affirmed the jury's award of compensatory and punitive damages to appellees Six Flags Over Georgia, LLC ("Flags") and Six Flags Fund, Ltd., L.P. ("Fund"). *Time Warner Entertainment Co. v. Six Flags Over Ga.*, 245 Ga. App. 334 (537 SE2d 397) (2000)

(*"Time Warner"*).[1] On January 18, 2001, the Supreme Court of Georgia denied the petition for a writ of certiorari filed by appellants Time Warner Entertainment Company, L.P. ("TWE") and its subsidiaries Six Flags Over Georgia ("SFOG"), Six Flags Entertainment Corporation ("SFEC"), and Six Flags Theme Parks, Inc. ("SFTP"). *Time Warner Entertainment Co. v. Six Flags Over Ga.*, 2001 Ga. LEXIS 98. However, on October 1, 2001, the United States Supreme Court granted certiorari, vacated our opinion, and remanded the case to us for further consideration in light of an opinion it issued on May 14, 2001, *Cooper Indus. v. Leatherman Tool Group*, 532 U. S. 424 (121 SC 1678, 149 LE2d 674) (2001) (*"Leatherman"*). *Time Warner Entertainment Co. v. Six Flags Over Ga.*, ___ U. S. ___ (122 SC 24, 151 LE2d 1) (2001). Upon remand, we redocketed this case and gave the parties an opportunity to brief and to orally argue the relevant issues.

1. *Leatherman* pertains only to our analysis of whether the award of punitive damages in this case was excessive. We addressed whether the award of punitive damages was excessive in Division 6 (c) of our original opinion. *Time Warner*, 245 Ga. App. at 356-357 (6) (c). Therefore, with the exception of Division (6) (c), we hereby reinstate our original opinion, *Time Warner*, 245 Ga. App. at 334-357.

2. *Review of Allegedly Excessive Punitive Damages Awards.*

(a) *The Standard of Review.*

(i) *Federal Constitutional Excessiveness Claims. Leatherman* requires state and federal appellate courts to review de novo claims that punitive damages awards are grossly excessive in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Leatherman*, 532 U. S. at 433-434. However, "[i]f no constitutional issue is raised, the role of the appellate court, at least in the federal system, is merely to review the trial court's 'determination [on the excessiveness issue] under an abuse of discretion

---

[1] This appeal is from a jury verdict in favor of a limited partnership and its sole limited partner against the general partner which from 1991 through 1998 operated the partnership's business investment, the Six Flags Over Georgia theme park. Appellee [Flags] is the limited partnership which owns the park. Appellee [Fund] is the partnership's sole limited partner and is comprised of individual investors. Although appellant Six Flags Over Georgia, Inc. ("SFOG") was the named general partner corporate entity responsible for operating the park, appellees alleged that Time Warner Entertainment Company, L.P. ("TWE"), acting through and in concert with its subsidiaries SFOG, Six Flags Entertainment Corporation ("SFEC"), and Six Flags Theme Parks, Inc. ("SFTP"), assumed the role of general partner and directed the activities of the partnership. The complaint alleged, in essence, that the general partner damaged the appellees by preferring its own financial interest over that of the partnership and of the limited partner. The jury returned a verdict in favor of the appellees, awarding a total of $197,296,000 in compensatory damages and $257,000,000 in punitive damages. (Footnotes omitted.) *Time Warner*, 245 Ga. App. at 334.

standard.'" Id. at 433, citing *Browning-Ferris Indus. v. Kelco Disposal*, 492 U. S. 257, 279 (109 SC 2909, 106 LE2d 219) (1989); see also *Foster v. Time Warner Entertainment Co.*, 250 F3d 1189, 1194, n. 3 (8th Cir. 2001) ("Time Warner has not argued that the punitive damages award violated its right to due process which would require a de novo review of the denial of its motion [for new trial or remittitur]" under *Leatherman*.). Further, if the federal constitutional claim is not raised in the court below, such arguments on appeal are "unavailing." *Leatherman*, 532 U. S. at 433, n. 7.

Because *Leatherman* applies only to excessive punitive damages claims raised under the federal constitution's due process clause, it does not reach excessiveness claims raised under state and federal common law. Thus, state and federal appellate courts remain free to review common law excessiveness claims under an abuse of discretion standard. See id.; *Foster*, 250 F3d at 1194; *Stroud v. Lints*, 760 NE2d 1176, 1180 (I) (Ind. App. 2002) (following the U. S. Supreme Court's remand for reconsideration in light of *Leatherman*, the Indiana Court of Appeals concluded that since no federal constitutional claim was raised, it could review the common law excessiveness claim under an abuse of discretion standard).

As one scholar quipped, judicial review of excessive punitive damages awards "now comes in both common-law and constitutional flavors." Murphy, Punitive Damages, Explanatory Verdicts, and the Hard Look, 76 Wash. L. Rev. 995, 1014 (Oct. 2001). Since *Leatherman*, many state and federal courts have recognized this federal due process/common law analytical split. For example, in July 2001, the Eleventh Circuit reviewed an award of both compensatory and punitive damages in a diversity action under an abuse of discretion standard. *Middlebrooks v. Hillcrest Foods*, 256 F3d 1241, 1249 (IV) (11th Cir. 2001). Applying Georgia law to the common law excessiveness claim, the Eleventh Circuit noted that de novo review under *Leatherman* was not required because the appellant failed to argue that the punitive damages award violated its constitutional rights. Id. at 1249, n. 5. Although some state appellate courts have embraced *Leatherman*'s de novo standard of review and applied it to all excessive punitive damages claims, e.g., *Campbell v. State Farm &c. Auto. Ins. Co.*, 432 Utah Adv. Rep. 44 (2001), other jurisdictions have declined to extend the standard's application beyond its federal due process bounds, e.g., *Trinity Evangelical Lutheran Church v. Tower Ins. Co.*, 641 NW2d 504 (Wis. App. 2002); *Stroud v. Lints*, 760 NE2d 1176 (Ind. App. 2002); *State Compensation Ins. Fund v. WPS, Inc.*, 2001 Cal. App. LEXIS 1410. The Supreme Court of Georgia has yet to enter this fray, so we proceed with caution.

In *Kent v. A. O. White, Jr., Consulting Engineer, P.C.*, 249 Ga. App. 893 (553 SE2d 1) (2002), a panel of this Court assumed that the

Supreme Court of Georgia "sub silentio" adopted *Leatherman* with respect to all excessive punitive damages award claims by virtue of an order remanding *Kent* to this Court. We are now convinced, however, that the remand order had no such implications. The Supreme Court of Georgia's remand order in that case, like the U. S. Supreme Court's remand order in this case, was a mandate to reconsider our opinion "in light of" *Leatherman*. *Kent v. A. O. White, Jr., Consulting Engineer, P.C.*, 2001 Ga. LEXIS 929. The U. S. Supreme Court has recognized that such a "grant-vacate-remand" order ("GVR") is a deferential method of sending a case back to a lower tribunal so that it may reconsider its decision in light of an intervening legal event. See *Lawrence v. Chater*, 516 U. S. 163, 166-169 (116 SC 604, 133 LE2d 545) (1996); see also *Hoover v. Kiowa Tribe &c.*, 986 P2d 516, 519 (Okla. 1999) (Wilson, J., dissenting). As Justice Scalia explained, "we left it to the state court to decide the effect of the intervening event, rather than follow our usual practice of deciding that question for ourselves." *Lawrence v. Chater*, 516 U. S. at 179 (Scalia, J., dissenting). Also, the Supreme Court of Georgia, in *Hosp. Auth. of Gwinnett County v. Jones*, 261 Ga. 613, 616-617 (409 SE2d 501) (1991), a punitive damages case that was "GVR'd" by the U. S. Supreme Court in light of new case law, distinguished the intervening case law and affirmed and reinstated its previous decision. Implicitly then, if a higher court remands a case to a lower court to decide an issue for itself, it logically follows that the higher court did not decide the issue pending before it. Therefore, to the extent *Kent* holds that the Supreme Court of Georgia, by virtue of its remand order, adopted the *Leatherman* standard of review with respect to all excessive punitive damages award claims, it is hereby overruled.

(ii) *State Common Law Excessiveness Claims.* Because *Leatherman* applies only to excessiveness claims raised under the due process clause of the federal constitution, precedent dictates that we must continue to review state common law claims under an abuse of discretion standard. *Hosp. Auth. of Gwinnett County v. Jones*, 259 Ga. 759, 760-766 (1)-(5) (386 SE2d 120) (1989), vacated, 499 U. S. 914 (111 SC 1298, 113 LE2d 234) (1991), reinstated, 261 Ga. 613, supra; see also *Scott v. Battle*, 249 Ga. App. 618, 621 (3) (548 SE2d 124) (2001). The Supreme Court of Georgia explained in *Hosp. Auth. of Gwinnett County v. Jones* that the right to punitive damages derives from the common law. 259 Ga. at 764 (5) (b); 261 Ga. at 616-617 (2). This Court has also held that the right to punitive damages is "as old as the right of trial by jury itself," is a "well established principle of the common law," and "is not, as many seem to suppose, an innovation upon the rules of the common law." (Citations and punctuation omitted.) *K-Mart Corp. v. Hackett*, 237 Ga. App. 127, 132-133 (2) (514 SE2d 884) (1999). Our deferential standard of review in punitive

damages cases is, in fact, well over two centuries old and derives from the aptly named English common law case, *Huckle v. Money*, 2 Wils. 205, 95 Eng. Rep. 768 (K. B. 1763). See *Seaboard Air-Line R. v. Miller*, 5 Ga. App. 402, 405 (63 SE 299) (1908). The King's Bench in *Huckle* opined that "it is very dangerous for the judges to intermeddle in damages for torts; it must be a glaring case indeed of outrageous damages in a tort, and which all mankind at first blush must think so, to induce a court to grant a new trial for excessive damages." See *Seaboard*, 5 Ga. App. at 405, quoting *Huckle*. This principle underlies OCGA § 51-12-12 (a), pertaining to court interference with damages awards generally: "The question of damages is ordinarily one for the jury; and the court should not interfere with the jury's verdict unless the damages awarded by the jury are clearly so inadequate or so excessive as to be inconsistent with the preponderance of the evidence in the case."

Applying this principle to appellate courts, the Supreme Court of Georgia explained that reviewing courts lack

> the broad discretionary powers invested in trial courts to set aside verdicts, and where the trial court before whom the witnesses appeared had the opportunity of personally observing the witnesses has approved the verdict, this court is without power to interfere unless it is clear from the record that the verdict of the jury was prejudiced or biased or was procured by corrupt means.

(Citation and punctuation omitted.) *Smith v. Miliken*, 247 Ga. 369, 372 (3) (276 SE2d 35) (1981). The reasoning implicit in this rule is that an excessive or inadequate verdict constitutes a mistake of fact rather than of law. *Moody v. Dykes*, 269 Ga. 217, 221-222 (6) (496 SE2d 907) (1998), citing *Southeastern Security Ins. Co. v. Hotle*, 222 Ga. App. 161, 165 (2) (473 SE2d 256) (1996). Under our system of jurisprudence, the resolution of factual issues is usually for the jury. Id.; *McClure v. Gower*, 259 Ga. 678, 684 (385 SE2d 7) (1989) ("the amount of the punitive damage award is 'exclusively a question for the jury to determine'") (citation omitted). The U. S. Supreme Court, however, broke with common law tradition (and avoided the application of the Seventh Amendment[2]) by characterizing a jury's decision to award a certain amount of punitive damages as a question of law.[3]

---

[2] "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, *and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States*, than according to the rules of the common law." (Emphasis supplied.) U. S. Const., Amend. VII.

[3] Whether the jury's award of punitive damages is really the result of a factual inquiry is a subject of some dispute. Certainly, as Justice Ginsburg points out in her dissent, puni-

*Leatherman*, 532 U. S. at 437. Some scholars consider this a "dangerous development," one that moves "the locus of decision-making away from juries and trial judges and toward appellate courts." (Footnote omitted.) Dorsaneo, Reexamining the Right to Trial by Jury, 54 S.M.U. L. Rev. 1695, 1733 (2001). In fact, in *Todd v. Roadway Express*, 178 FSupp.2d 1244 (M.D. Ala. 2001), the defendant argued that since the punitive damages inquiry is no longer a factual one, the plaintiff is no longer entitled to a jury trial on punitive damages. The district court refused to extend *Leatherman* to this extreme. Id.

Because the Supreme Court of Georgia has not embraced the idea that an award of punitive damages is a question of law, we believe we are bound by precedent to defer to the jury's factual decision-making process and to apply an abuse of discretion standard when evaluating whether an award is excessive under the common law. See, e.g., *Hosp. Auth. of Gwinnett County v. Jones*, 259 Ga. at 766 (5); *Scott v. Battle*, 249 Ga. App. at 621 (3); *Southeastern Security Ins. Co. v. Hotle*, 222 Ga. App. at 164 (1).

(b) *Criteria for Evaluating "Excessiveness" of Punitive Damages Awards.*

When an appellant has properly raised a federal due process claim, the reviewing court must apply the three "guideposts"[4] set out in *BMW of North America v. Gore*, 517 U. S. 559 (116 SC 1589, 134 LE2d 809) (1996) ("*Gore*"), in its de novo review of whether the award of punitive damages is grossly excessive. *Leatherman*, 532 U. S. at 440. When an appellant has not raised a federal constitutional due process claim, however, we apply state common law criteria for determining whether a punitive damages award is excessive. See id.

The Supreme Court of Georgia has held that an award of punitive damages under OCGA § 51-12-5.1 is to deter the repetition of reprehensible conduct by the defendant or others. *Hosp. Auth. of Gwinnett County v. Jones*, 261 Ga. at 614-615 (1), n. 2. "Because deterrence is based on factors other than the actual harm caused, we rejected the notion that punitive damages must necessarily bear some relationship[5] to the actual damages awarded by the jury." (Cita-

---

tive damages "derive their meaning from a set of underlying facts as determined by a jury." *Leatherman*, 532 U. S. at 446 (Ginsburg, J., dissenting). Nevertheless, what a jury does with those facts is a kind of case-by-case policymaking that involves consideration of broader issues, like deterrence and retribution. See Murphy, 76 Wash. L. Rev. at 1011-1012, supra.

[4] These guideposts are: (1) the degree or reprehensibility of the defendant's misconduct, (2) the disparity between the harm (or potential harm) suffered by the plaintiff and the punitive damages award, and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *Leatherman*, 532 U. S. at 440.

[5] "The concept of proportionality as a *legal* limitation on the amount of punitive damages applies, in Georgia, only when damages are given to compensate for wounded feelings." (Emphasis in original.) *Hosp. Auth. of Gwinnett County v. Jones*, 259 Ga. at 762 (2). See OCGA § 51-12-5.

tion and emphasis omitted.) Id. at 614 (1). Instead, the appellate courts look to see whether the award "shock[s] the judicial conscience." (Citation and punctuation omitted.) *Wilson Welding Svc. v. Partee*, 234 Ga. App. 619, 620 (507 SE2d 168) (1998). This test, which has been applied to damages awards based on jury verdicts generally, has a very long history and has been more fully elaborated thus:

> Before the verdict will be set aside on the ground that it is excessive, where there is no direct proof of prejudice or bias, the amount thereof, when considered in connection with all the facts, must shock the moral sense, appear exorbitant, flagrantly outrageous, and extravagant. It must carry its death warrant upon its face. Although a verdict may be large and generous, where the evidence abundantly authorized a finding for the plaintiff, this court does not feel authorized under the law to set the verdict aside on the sole ground that it is excessive, there being nothing in the record to indicate prejudice or bias on the part of the jury, and the verdict having been approved by the trial judge.

(Citations and punctuation omitted.) *Western & Atlantic R. v. Burnett*, 79 Ga. App. 530, 542-543 (7) (54 SE2d 357) (1949). Of course, an appellate court may look to the ratio of compensatory to punitive damages for some evidence that the punitive damages award is infected by bias or prejudice. See *Hosp. Auth. of Gwinnett County v. Jones*, 261 Ga. at 614 (1); *Southeastern Security Ins. Co. v. Hotle*, 222 Ga. App. at 164 (1) (e); *Oglethorpe Power Corp. v. Sheriff*, 210 Ga. App. 299, 301-302 (4) (c) (436 SE2d 14) (1993). We believe the *Gore* guideposts might also be helpful in determining whether an award of punitive damages is infected by bias or prejudice.[6]

3. *The Award of Punitive Damages Against Appellants.*

(a) *Appellants Abandoned Their Federal Due Process Excessiveness Claim.*

In their enumerations of error, appellants failed to assert that the award of punitive damages violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[7]

---

[6] However, we note that many scholars have found *Gore* as imperfect an attempt to evaluate punitive damages awards as those fashioned by state courts. See Developments in the Law, 113 Harv. L. Rev. 1783, 1792-1795 (2000). For example, the *Gore* guideposts combine a number of variables that are not specifically weighted. Consequently, these "variables make it difficult for a court to find precedential value in a prior decision, because it is nearly impossible to determine how an earlier court valued any one of them." (Footnote omitted.) Leading Case, 115 Harv. L. Rev. 356, 362 (2001).

[7] The issue was raised in the trial court in appellants' amended motion for judgment notwithstanding the verdict or, in the alternative, new trial.

Instead, they simply asserted the award was "excessive." In two sentences at the very end of their appellate brief, however, appellants noted that "punitive damages also violate[ ] the Due Process Clauses of the Georgia[8] and United States Constitutions," citing *Gore*. Appellants did not argue that the award was "grossly excessive"; rather, it alleged the appellees' injury was "purely economic in nature" and "evinced no indifference to or reckless disregard for the health and safety of others." Pretermitting whether this adequately enumerated an "excessiveness" claim under the federal due process clause, we considered the claim of error abandoned because appellants failed to cite to any relevant facts, give record citations, or present any legal analysis supporting that assertion. Court of Appeals Rule 27 (c) (2), (3). An assertion of error followed by a case citation is *not* legal argument. As we have explained, legal analysis "is, at a minimum, a discussion of the appropriate law as applied to the relevant facts." *Dixon v. MARTA*, 242 Ga. App. 262, 266 (4) (529 SE2d 398) (2000). Because appellants abandoned any error with respect to a federal constitutional excessiveness claim, we are not required to conduct a de novo review of the punitive damages award or to apply the *Gore* guideposts. *Leatherman*, 532 U. S. at 433. Consequently, we reinstate Division (6) (c) of our original opinion, *Time Warner*, 245 Ga. App. at 356 (6) (c), finding no abuse of discretion in the amount of the punitive damages award under Georgia common law.

(b) We recognize, however, that the Supreme Court of Georgia may choose to apply *Leatherman* and *Gore* to all excessive punitive damages claims or to the claim presented in this case. Therefore, as a matter of judicial economy, we also review the punitive damages award de novo and apply the *Gore* guideposts.

(i) *Reprehensibility*. We begin our analysis by examining the degree of reprehensibility of appellants' conduct in this case. In examining the degree of reprehensibility of a defendant's conduct, the Supreme Court in *Gore* outlined a number of "aggravating factors," including whether the harm was more than "purely economic in nature," and whether the defendant's behavior "evinced indifference to or reckless disregard for the health and safety of others." *Gore*, 517 U. S. at 576. Here, although the harm to Flags and Fund was primarily economic, it was caused by conduct we find especially reprehensible. Appellants' intentional breach of their fiduciary duty revealed a callous indifference to the financial well-being of their limited partners and their individual investors.

---

[8] We also find that appellants abandoned any claim of error under the due process clause of the Georgia Constitution. Had that claim been preserved, however, our analysis would be quite similar to that applied to common law excessiveness claims. See *Hosp. Auth. of Gwinnett County v. Jones*, 259 Ga. at 763-766 (5); 261 Ga. at 615-617 (2).

After closely scrutinizing over 80 volumes of record and transcript during the first appeal, we found that the evidence adduced supported the jury's conclusion that appellants acted in concert to breach SFOG's fiduciary duty to its business partners. Six and a half pages of our published opinion are dedicated to describing appellants' scheme to devalue their partners' investment for their own benefit. *Time Warner*, 245 Ga. App. at 335-341. We found this evidence clearly and convincingly supported an award of punitive damages under OCGA § 51-12-5.1 (b) because the evidence showed that "the appellants withheld vital business information from Fund and Flags, undertook to compete with them, took money belonging to them, and carried out a plan to depress the value of their investment, the Six Flags Over Georgia park." Id. at 356 (6) (a). Moreover, the jury found a specific intent to cause harm, id. at 334-335, n. 3, 356 (6) (b), which allowed it to award damages in excess of the $250,000 cap. OCGA § 51-12-5.1 (f), (g).

Appellants' conduct toward its partners and those who invested in the limited partnership was part of a premeditated plan surreptitiously executed over a period of years. Appellants' conduct was deceitful, self-serving, and financially damaging. More importantly, however, appellants' conduct was a breach of fiduciary duty, a violation of a confidential relationship of trust requiring the utmost in good faith. Even though Flags and Fund were, as appellants asserted at oral argument, controlled by "sophisticated business people," they were nevertheless entitled to rely on their general partner. Appellants' conduct was, in short, the kind of behavior we find "deserving of reproof, rebuke, or censure; blameworthy" — the very definition of "reprehensible." Random House Webster's Unabridged Dictionary (2nd ed.), p. 1634. A California court, which recently considered a comparable issue upon remand under *Leatherman*, held: "Trickery and deceit are reprehensible wrongs, especially when done intentionally through affirmative acts of misconduct." (Citation and punctuation omitted.) *Simon v. San Paolo U.S. Holding Co.*, 2001 Cal. App. LEXIS 2023. We agree.

(ii) *Ratio*. In *Gore*, although the U. S. Supreme Court held that the ratio of compensatory to punitive damages[9] is a factor to consider in determining whether the punitive damages award is excessive, it refused to draw a bright line. The court explained that "[w]e need not, and indeed we cannot, draw a mathematical bright line between

---

[9] Appellants suggested that because the award of punitive damages in this case is currently the largest in Georgia history, that it is excessive. An award of punitive damages, however, should not be viewed in the abstract or compared with awards from other cases. The punitive damages award must be viewed in its unique context, in light of the facts of the case and with reference to the actual damages awarded and the potential harm that could have resulted from the defendant's conduct. See *Gore*, 517 U. S. at 580-583.

the constitutionally acceptable and the constitutionally unacceptable that would fit every case. We can say, however, that a general concern of reasonableness properly enters into the constitutional calculus." (Citations and punctuation omitted.) *Gore*, 517 U. S. at 582-583 (III). It is not enough, as some have suggested, "to do the math"; we must also do the reasoning.

In this case, the ratio of compensatory to punitive damages is 1 to 1.3. We see no "shocking disparity" inherent in this figure. Cf. *Gore*, 517 U. S. at 581, n. 34, 582-583 (1:500 ratio reversed). Nor does it appear to approach that fuzzy line suggesting the bounds of "constitutional impropriety." Id. at 581, citing *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U. S. 1, 21 (111 SC 1032, 113 LE2d 1) (1991) (1:4 ratio upheld); *TXO Production Corp. v. Alliance Resources Corp.*, 509 U. S. 443, 451, 462 (III) (113 SC 2711, 125 LE2d 366) (1993) (1:10 ratio upheld). More importantly, however, given the amount of intentional economic damage inflicted by the appellants, corporate entities with collective assets measured in billions of dollars, we believe the award of punitive damages was reasonably calculated to punish them and to deter such conduct in the future. See *Simon v. San Paolo U.S. Holding Co.*, supra, 2001 Cal. App. LEXIS at 2040-2043.

(iii) *Sanctions for Comparable Misconduct.* Georgia law authorizes double and treble damages for a variety of unfair and deceptive business practices, certain securities violations, and generally corrupt corporate behavior.[10] Statutory multiple damages awards are intended to deter those who might engage in deceptive practices when the risk of getting caught would otherwise be an acceptable cost of doing business. See, e.g., *Zeeman v. Black*, 156 Ga. App. 82 (273 SE2d 910) (1980) (private right of action under OCGA § 10-1-399 furthers policy of protecting the citizenry from unfair business practices). The award of punitive damages in this case is well within the range of comparable multiple damages penalties for dishonest business conduct. The award speaks to deterrence and appears in all respects reasonably calculated to further that end. Given existing Georgia statutes for comparable corporate misbehavior, appellants received fair notice not only of the kind of conduct that would subject them to punishment, but also of the severity of the penalty that might be imposed. Cf. *Gore*, 517 U. S. at 585.

Applying a de novo standard of review and weighing the *Gore* guideposts, we find that the award of punitive damages under these circumstances does not violate appellants' federal due process rights.

---

[10] See, e.g., OCGA §§ 10-1-399 (c) (Fair Business Practices Act; treble damages for intentional violations); 16-14-6 (c) (RICO; treble damages for injury under section); 10-1-763 (b) (double damages for wilful misappropriation of trade secrets); 10-5-14 (h) (2) (treble damages for certain securities violations).

*Judgment affirmed and reinstated on remand. Blackburn, C. J., Pope, P. J., Smith, P. J., Ruffin, Eldridge, Barnes, Miller, Phipps and Mikell, JJ., concur. Andrews, P. J., and Johnson, P. J., recused.*

DECIDED MARCH 29, 2002 —

*Chandler & Britt, Walter M. Britt, Alston & Bird, Ronald L. Reid, Troutman Sanders, John J. Dalton*, for appellants.

*Butler, Wooten, Fryhofer, Daughtery & Sullivan, James E. Butler, Jr., George W. Fryhofer III, Joel O. Wooten, Jr., Bondurant, Mixson & Elmore, H. Lamar Mixson, Michael B. Terry, Joshua F. Thorpe, Davidson & Tucker, Gerald Davidson, Jr.*, for appellees.