A98A0991. WILLIAMS v. WORSLEY et al.
(510 SE2d 46)

SMITH, Judge.

Alice and Allen Worsley, as parents of Ashley Worsley, brought this wrongful death action against Thomas Williams, Alice Worsley's father, after 13-year-old Ashley was electrocuted on Williams's property. The case was tried to a jury, which returned a verdict in favor of the Worsleys in the amount of $10,000. The trial court subsequently granted the Worsleys' motion for new trial only on the issue of damages, on the ground that the jury's award was "clearly so inadequate as to be inconsistent with the preponderance of the evidence." After a second trial, a jury found the full value of Ashley's life to be $750,000. Williams appeals, raising several enumerations concerning both trials.

Ashley was found dead under an open building, or shelter, owned by Williams, his grandfather. It appears from the evidence presented that a chain, which had been hung over a rafter in the shelter, contacted a fluorescent light fixture attached to the rafter. The fixture was not grounded, and expert testimony was presented that the ballast in the fixture had shorted. Apparently unknown to anyone, the electric switch in the shelter had been engaged, although the lights were not actually operating. Ashley was electrocuted when his hand touched the chain. This building, used as a storage shelter, had been constructed sometime in 1980 or 1981 by Williams with the assistance of Allen Worsley. Williams, however, wired the building for electricity and admitted he did not ground the fluorescent light fixture. He testified that he meant to ground the fixture but never did.

Williams raises several arguments with respect to each trial. Finding no error, we affirm.

1. Williams contends the trial court erroneously failed to instruct the jury during the first trial that Ashley was a licensee on Williams's property and on the applicable standard of care to be applied to licensees.

A licensee is a person who is not a customer, servant, or trespasser, does not have a contractual relationship with the owner of the premises, and is permitted to enter the premises merely for his or her own interests, gratification, or convenience. OCGA § 51-3-2. Williams argues that Ashley was inside the shelter for his own gratification and therefore that a charge on the duty owed to licensees was required. But the record is silent as to why Ashley was inside the shelter. The question of whether Ashley was a licensee was not raised by the evidence, and a charge on this issue was therefore unauthorized. "For a refusal to give a requested charge to be error, the request must be entirely correct, accurate, adjusted to the pleadings, law and evidence, and not otherwise covered in the general charge. [Cit.]" *Smith v. Curtis*, 226 Ga. App. 470, 471 (2) (486 SE2d 699) (1997).

2. Williams contends the trial court erroneously permitted the Worsleys' expert to testify that the fixture was negligently installed. We do not agree. The expert testified that the fixture was not connected in a safe manner and that electrocution is a possibility when a fixture is not properly grounded. Williams objected to the expert's subsequent testimony that the fixture was negligently installed. We find no error in the admission of this testimony, for the average person is not familiar with electrical installation procedure. And "it is well established that an expert witness may testify even as to the ultimate issue of fact where the inferences to be drawn from the evidence are beyond the ken of jurors. [Cit.]" *Fouts v. Builders Transp.*,

222 Ga. App. 568, 576-577 (8) (474 SE2d 746) (1996) (Department of Transportation engineer properly allowed to testify that intersection negligently designed).

3. Williams argues that the trial court erroneously concluded that comparative negligence was not an issue in the first trial. Had comparative negligence been an issue, the trial court would not have been authorized to grant a new trial on damages only. See *Robinson v. Star Gas of Hawkinsville*, 269 Ga. 102, 104-105 (2) (498 SE2d 524) (1998). Although Williams has submitted the affidavits of two jurors reciting that the jury considered, among other things, the Worsleys' failure to control Ashley, as well as the "negligence of the deceased minor child," we cannot agree with Williams that comparative negligence was an issue properly raised during the first trial. Williams did not include in his pleadings any allegations of negligence on the part of Ashley or the Worsleys, nor was comparative negligence made an issue in the pretrial order. Furthermore, even if evidence was arguably presented at trial hinting that the Worsleys or Ashley may have been at fault, Williams did not argue that comparative negligence principles applied, and the jury was not instructed that it could reduce any award in proportion to plaintiffs' fault. See *Bridges Farms v. Blue*, 267 Ga. 505 (480 SE2d 598) (1997) (under comparative negligence doctrine, plaintiff whose negligence is less than negligence of defendant not denied recovery, but damages diminished in proportion to degree of fault attributable to plaintiff). Comparative negligence principles, which would have directed the jury concerning the effect of evidence of plaintiffs' fault, were not affirmatively placed before the jury. Comparative negligence therefore was not properly made an issue.

4. The trial court granted the Worsleys' motion for new trial only as to damages, on the ground that the jury's verdict was inadequate. Williams contends this was error. We do not agree.

We recognize the difficulty faced by any jury in determining the value of human life. This difficulty is necessarily compounded when a jury must place a value on the life of a child, particularly since such objective standards as earning capacity often have not yet been established with regard to children. A jury making such a complex decision must make its award based on the subjective standard of its collective experience: "[T]he value of the child's life must be established by the enlightened conscience of an impartial jury as applied to the evidence in the case, including testimony as to such child's age, life expectancy, precocity, health, mental and physical development, family circumstances, and from the experience and knowledge of human affairs on the part of the jury." (Citation and punctuation omitted.) *Reliance Ins. Co. v. Bridges*, 168 Ga. App. 874, 888 (311 SE2d 193) (1983). Under the authority of OCGA § 51-12-12 (b), a

trial court may grant a new trial only as to damages if the jury's damages award "is clearly so inadequate . . . as to be inconsistent with the preponderance of the evidence."

Of course, we also recognize that any life, especially that of a child, escapes precise valuation and must be measured against subjective standards. We further recognize that jury verdicts, in general, are to be given great deference. Nevertheless, we have no hesitation in saying that the first jury's $10,000 award for the value of Ashley's life was inconsistent with a preponderance of the evidence. Undisputed evidence was presented to the jury that Ashley, who was in seventh grade at the time of his death, was a good student, was obedient, and "was a very good child." No countervailing evidence was presented showing, for example, that Ashley was in poor health and not expected to live a normal life span. And as discussed above, comparative negligence principles were not affirmatively placed in issue in the case; the jury was given no guidance as to the effect of the Worsleys' or Ashley's negligence, if any, on its verdict. Under these circumstances, we cannot say the trial court abused its discretion in granting a new trial on damages only.

5. Williams enumerates as error the trial court's refusal to permit him "to amend his answer before entry of the pretrial order prior to the second trial to reflect the evidence admitted at the first trial of the matter relating to comparative negligence and responsibility of the parties." In a separate enumeration he similarly contends that the trial court erred in granting the Worsleys' motion in limine before the second trial, "thereby eliminating discussion of causation, foreseeability, comparative negligence and other issues during the second trial of the case and denying [him] a fair trial." But because the trial court properly allowed a new trial only on the issue of damages, further litigation on the issue of the parties' negligence was precluded. Williams was afforded the opportunity to make comparative negligence an issue in the first trial and failed to do so. We find no merit in these arguments.

6. Williams contends that the trial court's grant of the Worsleys' motion for new trial only on damages defeated his due process rights to a fair and impartial jury as guaranteed by the Georgia Constitution. Assuming that Williams properly raised the issue and secured a ruling below, the trial court's ruling was not error. A new trial only on damages is expressly authorized in certain instances by OCGA § 51-12-12 (b). Williams was given full and fair opportunity in the first trial to place before the jury issues concerning comparative negligence, which may or may not have affected the jury's award.

7. Williams argues the trial court erred in admitting photographs depicting Ashley at the scene of his death. The "admissibility of evidence is a matter which rests largely within the sound discre-

tion of the trial court. Even evidence of doubtful relevancy or competency should be admitted and its weight left to the jury. Further, where evidence is offered and objected to, if it is competent for any purpose, it is not erroneous to admit it." (Citations and punctuation omitted.) *Dept. of Transp. v. Dalton Paving &c.*, 227 Ga. App. 207, 221 (8) (489 SE2d 329) (1997). The photographs at issue here were at least marginally relevant to the issues raised in this case. But even assuming, without deciding, that the photographs were not relevant to any issue raised in the second trial only on damages, their admission was harmless; they were not gruesome, nor has Williams shown, under the circumstances present here, that the photographs were particularly inflammatory. See generally *Matthews v. State*, 268 Ga. 798, 800 (3) (b) (493 SE2d 136) (1997); *Ga. Osteopathic Hosp. v. O'Neal*, 198 Ga. App. 770, 780 (13) (403 SE2d 235) (1991) (full concurrence as to Division 13).

8. Williams contends the trial court erred during the second trial by instructing the jury that the value of Ashley's life was measured by the value to the deceased. He apparently takes issue with that portion of the court's charge stating that the measure of damages was the value of life to Ashley to himself had he lived. It is true that a similar charge appears to have been somewhat criticized. See *Reliance Ins. Co. v. Bridges*, 168 Ga. App. at 886-887. But as in *Reliance*, we find no error. The court here also charged the jury, in compliance with OCGA § 51-4-1 (1), that if plaintiffs were entitled to recover damages, they could recover "the full value of the life of the deceased without deduction for necessary or other personal expenses of the deceased, if that person had lived." Moreover, the court charged the jury that the measure of damages was the full value of the life of the child as found by its enlightened conscience and that the issue of damages was left "to the sound judgment, experience and conscience of the jury." Considering this charge as a whole, as we must, see, e.g., *Whitehead v. Cogar*, 180 Ga. App. 812, 813 (1) (350 SE2d 821) (1986), we cannot say the trial court erred.

9. Williams's argument that the trial court erred by denying his motion to permit immediate review "as to the issues raised by the grant of the plaintiffs' motion for new trial as to damages only" is rendered moot by our holdings in Divisions 3 and 4.

*Judgment affirmed. Johnson, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED NOVEMBER 24, 1998 —
RECONSIDERATION DENIED DECEMBER 18, 1998 

*Porter, Lehman & Chason, Thomas L. Lehman*, for appellant.
*Ronnie J. Lane*, for appellees.