A99A0216. STEWART v. MEDICAL CENTER OF CENTRAL GEORGIA, INC. et al.

(520 SE2d 747)

RUFFIN, Judge.

Charlotte Stewart, as next friend of her son, Jerami, sued the Medical Center of Central Georgia d/b/a Med Center West and Dr. Vicki James alleging medical malpractice that resulted in the wrongful death of Jerami. After a jury found in favor of Stewart and awarded $127,679.73, the trial court entered judgment on the award. Stewart filed a motion for new trial on damages. The trial court denied the motion, and Stewart appeals. We affirm.

The evidence adduced at trial showed that Jerami Stewart was born on July 13, 1979. On Wednesday, November 3, 1993, he began exhibiting signs of illness including rapid, irregular breathing, achiness, shaking and a scratchy throat. His mother took him to Med Center West, an urgent care facility operated by the Medical Center of Central Georgia, where he was seen by Dr. James, who diagnosed him with tonsillitis and an upper respiratory infection.

The next evening, Jerami's condition worsened, and he was taken by ambulance to the Medical Center of Central Georgia. Jerami was admitted to the hospital for a staph infection. Although the source of the infection was not immediately apparent, the doctors eventually determined that the infection stemmed from ingrown toenails. As a complication from the infection, Jerami developed adult respiratory distress syndrome and died on November 30, 1993.

At the trial for wrongful death, Dr. Robert Coston testified for Stewart as an expert in the field of economic evaluation. Dr. Coston based his valuation of Jerami's life on three scenarios: (1) Jerami's earning potential had he obtained a college degree; (2) Jerami's earning potential had he earned an associate degree; and (3) Jerami's earning potential had he graduated from high school. Dr. Coston concluded that the present value of Jerami's earning potential was as follows:

| | |
|---|---|
| (1) Bachelor's Degree: | Income = $1,170,476.42 |
| | Fringe Benefits = $234,095.28 |
| (2) Associate Degree: | Income = $918,310.62 |
| | Fringe Benefits = $137,746.59 |
| (3) High School Diploma: | Income = $713,441.87 |
| | Fringe Benefits = $71,344.19 |

In addition, Dr. Coston testified regarding the economic loss for Jerami's household contributions. According to Dr. Coston, a male works approximately ten hours per week around the house. Using a minimum wage of $5.15 per hour[1] and estimating Jerami would make such household contributions until he reached the age of 70, Dr. Coston concluded that the present day value of Jerami's household contributions was $127,679.73. The defense did not call any expert to refute Coston's testimony. In cross-examining Dr. Coston, however, the defense did attempt to undermine the methods he employed in calculating damages. The jury found in favor of Stewart and awarded $127,679.73.

On appeal, Stewart contends that the damages awarded by the jury are inadequate. According to Stewart, since the jury found the defendants liable for Jerami's death, the jurors had an obligation to assess damages based upon the full value of Jerami's life, including his earning potential. Stewart argues that, by awarding "to the penny" the amount that Dr. Coston equated to loss of household contributions, the jury clearly failed to award money for loss of earnings.[2] We disagree.

Apparently, Stewart believes the jury was obligated to return a verdict in line with Coston's calculations. However, a jury is not obligated to accept an expert's testimony even when it is uncontradicted. See *Smith v. Godfrey*, 155 Ga. App. 113, 114 (1) (270 SE2d 322) (1980). Thus, the jury was not bound to conclude that $127,679.73 represented the loss of Jerami's household contributions notwithstanding Dr. Coston's testimony. Rather, the jury was free to conclude that the amount approximated Jerami's loss of earnings.

We note that Coston's calculations for Jerami's future earnings were premised upon the conclusion that Jerami would graduate from high school or obtain a degree. As Jerami was 14 at the time of his death, he had not yet obtained his high school diploma, and the jurors were not required to believe that he would do so. With regard to Jerami's household contributions, Dr. Coston testified that, in reaching the $127,697.73 figure, he based his calculations on estimated contributions from Jerami through the age of 70. If the jury concluded, for whatever reason, that Jerami would not graduate from high school, they could have used the household contributions figure

---

[1] On cross-examination, Dr. Coston testified that he used a base minimum wage of $5.15, but that he estimated that minimum wage would increase at a rate of six percent.

[2] Defendants argue that this is a case of comparative negligence and that the jury's verdict reflects consideration of Jerami Stewart's negligence. We note, however, that the issue of comparative negligence was not raised in the pleadings, the defendants did not argue the issue at trial, and the jury was not charged on comparative negligence. Thus, "[c]omparative negligence . . . was not properly made an issue." *Williams v. Worsley*, 235 Ga. App. 806, 808 (3) (510 SE2d 46) (1998).

as an approximation for his future earnings.

Moreover, the jury did *not* use a special verdict form. Thus, in order for us to conclude that the jury only awarded damages for household contributions, we would have to assume, as a matter of law, that the jury intended its award to represent only household contributions. We decline to make such an assumption solely because the jury used the same figure that the expert witness used to represent the loss of Jerami's household contributions.

"[A]n excessive or inadequate verdict is a mistake of fact rather than of law and addresses itself to the discretion of the trial judge who, like the jury, saw the witnesses and heard the testimony." *Moody v. Dykes*, 269 Ga. 217, 221-222 (6) (496 SE2d 907) (1998). Although this Court may set aside an inadequate verdict under OCGA § 51-12-12 (a), the threshold is *extremely high*. Id. at 222. As a general rule,

> the jury's award cannot be successfully attacked so as to warrant a new trial unless it is so flagrantly excessive or inadequate, in light of the evidence, as to create a clear implication of bias, prejudice or gross mistake on the part of the jurors. Even though the evidence is such as to authorize a greater or lesser award than that actually made, the appellate court will not disturb it unless it is so flagrant as to shock the conscience. Moreover, the trial court's approval of the verdict creates a presumption of correctness that will not be disturbed absent compelling evidence.

(Citations and punctuation omitted.) *Consolidated Freightways Corp. of Delaware v. Futrell*, 201 Ga. App. 233, 234 (2) (410 SE2d 751) (1991).

Here, the jury's $127,679.73 award does not shock the conscience. Compare *Williams*, supra at 809 (4) (affirming trial court's grant of motion for new trial on damages following $10,000 jury award for wrongful death of child). Thus, we cannot say that the award is so inadequate as to reflect bias, prejudice or gross mistake on the part of the jurors. Accordingly, the trial court did not err in denying Stewart's motion for new trial on damages.

*Judgment affirmed. Andrews, P. J., concurs. McMurray, P. J., concurs in judgment only.*

DECIDED JULY 13, 1999 ▮

*Gregory, Christy & Maniklal, Hardy Gregory, Jr., Gary C. Christy, Hogue & Hogue, Franklin J. Hogue, Laura D. Hogue*, for appellant.

*Pursley, Howell, Lowery & Meeks, Roy H. Meeks, Jr., William P. Tinkler, Jr.*, for appellees.