## A01A0514. THOMAS v. THE STATE.
### (545 SE2d 354)

MIKELL, Judge.

Eric Thomas was convicted of armed robbery and aggravated assault by a Dodge County jury. On appeal, he contends that the trial court erred in admitting evidence of his bad character and by denying his motion for new trial, the basis of which was insufficiency of the evidence. For the following reasons, we affirm.

"On appeal, the standard of *Jackson v. Virginia*[1] is the proper test for challenges to the sufficiency of the evidence arising from the overruling of a motion for new trial."[2] In applying the standard, we do not weigh the evidence adduced below or assess the credibility of witnesses.[3]

Viewed in the light most favorable to the verdict, the evidence shows that a robbery and aggravated assault occurred at the residence of Tony Smith on April 7, 1999. Tony Smith provided a general description of the perpetrator, which was consistent with that provided by the other two victims, Tommy Smith, who was shot during the robbery, and Billy Campbell. None of the victims knew the perpetrator.

Tommy Smith testified that his younger brother, Donte, told him that he had learned from Eric Anderson that Thomas was the perpetrator.[4] Subsequently, Tommy Smith obtained a photograph of Thomas from Shetaura Lyons, who was Anderson's sister and Thomas' former girlfriend. Lyons testified that Tommy Smith described Thomas perfectly before she gave him the photograph. Their conversation occurred approximately a week and a half after the incident.

Tommy Smith took the photograph to his brother, Tony Smith, who recognized Thomas as the perpetrator. Tony Smith showed the picture to the other victim, Campbell. On the following day, April 19, 1999, Tommy and Tony Smith gave the photograph to Officer Todd Lowery of the Georgia Bureau of Investigation and told him that Thomas was the perpetrator. Each victim also identified Thomas during the trial.

1. In his first enumeration of error, Thomas argues that the trial court erred when it admitted evidence of his bad character. We disagree.

The evidence in question was contained in one of three letters that Lyons wrote to Thomas. During Lyons' cross-examination,

---

[1] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[2] *Allen v. State*, 237 Ga. App. 744, 745 (1) (516 SE2d 788) (1999).
[3] *Hutchinson v. State*, 232 Ga. App. 368, 369 (501 SE2d 873) (1998).
[4] There is no evidence as to exactly when this conversation occurred.

defense counsel introduced the letters to show that Lyons was bitter because Thomas ended their relationship after cheating on her with another woman. In one of the letters, Lyons wrote: "You're just scared because the truth has come out about you stealing that car." During the state's redirect examination of Lyons, she testified that she saw Thomas steal the car. Defense counsel objected on the grounds that the testimony was irrelevant and should be prohibited since it discussed other crimes. The trial court overruled the objection on the grounds that defense counsel opened the door. We agree.

Under OCGA § 24-9-20 (b), "no evidence of general bad character or prior convictions shall be admissible unless and until the defendant shall have first put his character in issue." During Lyons' direct examination, there was no inquiry about Thomas' prior crimes or bad character. Defense counsel, however, opened the door about the alleged theft by introducing Lyons' letters to Thomas to show her bias. No portions of the letters were redacted. It was only after the letters were admitted that the state fully explored their content on redirect examination. "[I]t is well established that one cannot complain of a ruling that his own trial tactics or conduct procured or aided in causing."[5] Thus, the trial court did not err in permitting the state to explore the contents of Lyons' letter on redirect examination.

2. Thomas contends that the trial court erred in denying his motion for new trial because the evidence was insufficient to sustain his conviction. Again, we disagree.

Thomas argues that the only evidence connecting him to this crime arises from a tainted pretrial identification procedure that was initiated by his scorned ex-girlfriend, Lyons. In his brief, Thomas acknowledges that a private citizen, Lyons, performed the identification that he contends was suggestive. Yet, he contends that case law involving suggestive identification procedures initiated by the police should be applied here and relies on *Neil v. Biggers*[6] and other similar cases in support of his argument that the identification procedure was tainted. A similar argument was rejected by the Supreme Court in *Lyons v. State*.[7] In *Lyons*, the Supreme Court stated that *Neil v. Biggers* involves "the suggestiveness of a confrontation procedure used by police for purposes of obtaining witness identification."[8]

---

[5] (Citation omitted.) *Maner v. State*, 221 Ga. App. 826, 830 (3) (472 SE2d 716) (1996).

[6] 409 U. S. 188 (93 SC 375, 34 LE2d 401) (1972).

[7] 247 Ga. 465, 466 (277 SE2d 244) (1981) (the Supreme Court rejected the defendant's attempt to invoke the protections of the Fourteenth Amendment where the confrontation procedure was initiated by the witnesses instead of the police).

[8] Id. at 466.

Thomas cites *Bradley v. State*,[9] *Talley v. State*,[10] and *Perkins v. State*[11] in support of his argument that the display of a single photograph for identification purposes is impermissibly suggestive. Each of these cases, however, involved state action rather than citizen action. In this case, the evidence shows that Lyons provided Thomas' photograph after Tommy Smith described him. Furthermore, the victims showed the photograph to each other before it was given to the police. Thus, "[t]he issue here is not the possible taint of identification due to suggestive pre-trial procedures, but, rather the credibility of eyewitnesses to the incident."[12] When an eyewitness identifies a defendant, the eyewitness' credibility is a matter for the jury to decide, not this court.[13] This rule applies even in cases where the defendant relies on the defense of misidentification, as Thomas did in this case.[14]

Thomas urges us to consider Lyons' credibility because of the circumstances under which their relationship ended and Lyons' threats that she would exact vengeance against him, all of which was known to the jury. If we were to do as he suggests, we would be assuming the role of the trier of fact. As an appellate court, we cannot assume that role.[15] "Issues regarding the credibility of witnesses are to be resolved by the trier of fact."[16] Accordingly, since the evidence of Thomas' guilt was sufficient under *Jackson v. Virginia*,[17] we find the trial court did not err in denying his motion for new trial.

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED FEBRUARY 2, 2001.

*Straughan & Straughan, Mark W. Straughan*, for appellant.
*Timothy G. Vaughn, District Attorney, Russell P. Spivey, Assistant District Attorney*, for appellee.

---

[9] 152 Ga. App. 902 (264 SE2d 332) (1980) (single photographic display by police, though impermissibly suggestive, was not conducive to irreparable misidentification).

[10] 137 Ga. App. 548 (224 SE2d 455) (1976) (likelihood of misidentification was not substantial where the police showed a molestation victim a single photograph of the defendant).

[11] 216 Ga. App. 118 (453 SE2d 135) (1995) (single photographic display by police was permitted where the totality of the circumstances did not indicate a substantial likelihood of misidentification).

[12] (Punctuation omitted.) *Duck v. State*, 250 Ga. 592, 597 (3) (300 SE2d 121) (1983).

[13] See *Wimberly v. State*, 233 Ga. 386, 387 (3) (211 SE2d 281) (1974).

[14] *Randolph v. State*, 203 Ga. App. 115 (2) (416 SE2d 117) (1992).

[15] See *Hutchinson*, supra.

[16] (Citation omitted.) *Duck*, supra at 598 (3).

[17] Supra.