A03A0749. GRIFFIN et al. v. WALLACE.
(581 SE2d 375)

MIKELL, Judge.

Diane Griffin and Paul E. Wallace, Jr., appeal the trial court's order denying their petition to enforce a settlement agreement they allege was reached with appellee Trudy Wallace, the widow of their late father. "On a motion to enforce a settlement agreement, we construe the evidence to uphold the trial court's judgment. [Cit.] We will not disturb a trial court's findings thereon unless 'clearly erroneous.'" *Ligon v. Bartis*, 243 Ga. App. 328 (530 SE2d 773) (2000), citing *Morrow v. Vineville United Methodist Church*, 227 Ga. App. 313, 317

---

(2) (489 SE2d 310) (1997); OCGA § 9-11-52 (a).[1] Bearing this standard in mind, we affirm the judgment of the trial court.

The underlying dispute arose after Wallace filed a petition to probate her late husband's last will and testament. The appellants, the decedent's children from a previous marriage, filed a caveat alleging that their father's will had been revoked by a subsequent will that had not been located. The parties attended court-ordered mediation on March 12, 2002. The appellants contend that a settlement agreement was ultimately reached; however, Wallace disagrees.

The record shows that the mediation session took place at the office of the mediator, Anna Herrera. All of the parties were represented by counsel. During the mediation, Wallace made an initial settlement offer of $500,000, but she did not offer to give the appellants a percentage of any additional assets. The appellants rejected that offer and extended a counteroffer whereby they would receive $550,000 from their father's estate, plus 40 percent of all uncollected accounts. Wallace rejected the counteroffer. She testified that she responded to the children's counteroffer by telling Herrera, "[t]here's no way." She further testified that "[t]hey rejected my offer, and I rejected theirs" and that she left the mediation with the belief that "nothing was settled." Herrera testified that she "never relayed an acceptance."

According to Adam Gaslowitz, counsel for the appellants, after Herrera reported that Wallace had rejected the children's counteroffer, Herrera told him and his clients that Wallace's initial offer was "being put back on the table." However, Wallace disputes this account and testified that she did not extend her initial offer again after rejecting the appellants' counteroffer. Gaslowitz admitted that his clients did not accept Wallace's offer at the March 12, 2002, mediation. The session adjourned later that night with the understanding that it would continue after the parties had an opportunity to investigate the existence of additional assets.

On April 19, 2002, Wallace's counsel sent a letter to Gaslowitz's firm stating that: "After reviewing the status of this case, my client

---

[1] The appellants urge us to apply a plain legal error standard of review. They cite *Auto-Owners Ins. Co. v. Crawford*, 240 Ga. App. 748 (525 SE2d 118) (1999), which provides that "[w]hether a settlement is an enforceable agreement is a question of law for the trial court to decide. An appellate court, however, owes no deference to the conclusions of a trial court in regard to legal questions." (Citations omitted.) Id. at 749-750 (1). That case is distinguishable from the case at bar, because the facts in *Auto-Owners* were undisputed, and the court merely considered whether an enforceable settlement agreement existed as a matter of law. Here, the court conducted a hearing and, after considering the evidence, concluded that "Plaintiffs did not carry their burden of proof to show by a preponderance of the evidence that there was an offer which had been made by Defendant . . . that was still open when Plaintiffs attempted to accept such offer." Because the trial court was called upon to act as the finder of fact, we apply the "clearly erroneous" standard. OCGA § 9-11-52 (a).

believes that continuing to mediate is a waste of everyone's time. This is not to say that settlement offers would not be considered." No reference was made to any outstanding offer. On April 25, 2002, Wallace's counsel wrote to the probate court asking that the case be set for trial. The letter further stated that "[o]ur clients had an all day mediation session in March, but have not reached an agreement to date."

On May 3, 2002, Walter Hamberg, an associate of Gaslowitz who also represented the appellants, sent a letter to Wallace's attorney purporting to accept the initial settlement offer extended in the mediation session. Despite the fact that Wallace's initial offer did not include uncollected or undiscovered assets, the letter also stated: "Regarding after found assets, we would propose that we enter into an additional agreement splitting the assets on a percentage basis, with a premium going to the person who locates or collects the asset."

Appellant Paul Wallace, Jr., testified that he believed that Wallace's offer remained open at the close of the mediation session. However, according to Wallace, it was her understanding that none of the offers remained open after the parties failed to reach a settlement during the court-ordered mediation. She testified that "if . . . we did not reach any agreement, then . . . there was just no agreement made, and it was over. . . . [W]hatever we talked about was . . . closed . . . if we did not reach an agreement by the end of the day." She further testified that her initial proposal to settle the case for $500,000 was a "one-time" offer during the mediation and that it was no longer open when the appellants attempted to accept it.

After hearing the evidence and weighing the credibility of the witnesses, the trial court concluded that the appellants failed to prove that Wallace's settlement offer was open when they attempted to accept it and declined to enforce the alleged agreement. Construing the evidence to uphold the trial court's judgment and applying the "any evidence" standard, we find sufficient evidence to support the judgment. See *Morrow*, supra at 318.

> An oral settlement agreement must be definite, certain and unambiguous. For such an agreement to be binding on the parties[,] it should be clear that it is full and complete, covers all issues, and is understood by all litigants concerned. . . . [I]t is well settled that an agreement between two parties will occur only when the minds of the parties meet at the same time, upon the same subject matter, and in the same sense. . . . In order that there may be an agree-

ment, the parties must have a distinct intention common to both and without doubt or difference.

(Citations and punctuation omitted.) *Tekin v. Whiddon*, 233 Ga. App. 645, 648 (2) (504 SE2d 722) (1998). Based on evidence in the record that the parties disagreed on whether the settlement offer remained open at the conclusion of the mediation session, it cannot be said that the minds of the parties met "at the same time, upon the same subject matter, and in the same sense" as required in order for an oral settlement agreement to be enforceable.

Furthermore, even assuming, arguendo, that the acceptance letter from Hamberg somehow constituted a written settlement agreement, there is evidence that the parties did not agree on all four terms contained in the letter. See generally *Brumbelow v. Northern Propane Gas Co.*, 251 Ga. 674, 676 (308 SE2d 544) (1983) (letters prepared by attorneys memorializing the terms of an agreement can be considered a written settlement agreement). Significantly, Term 4 of the letter provided: "Any property not known of or contemplated at the time of this agreement is not included in this settlement." According to the testimony of Wallace's counsel, that term is inconsistent with her initial settlement offer. In fact, counsel testified that the assumption was that Wallace would keep all known and unknown assets of the estate after providing the appellants with a payment of $500,000. "Under Georgia law, an agreement alleged to be in settlement and compromise of a pending lawsuit must meet the same requisites of formation and enforceability as any other contract." (Citation and punctuation omitted.) *Johnson v. Gwinnett County*, 215 Ga. App. 79, 80-81 (2) (449 SE2d 856) (1994). "If there was in fact any essential part of the contract upon which the minds of the parties had not met, or upon which there was not an agreement[,] it must follow that a valid and binding contract was not made." (Citation and punctuation omitted.) *Tekin*, supra. Accordingly, we affirm the judgment of the trial court denying the appellants' petition to enforce the alleged settlement agreement.

*Judgment affirmed. Johnson, P. J., and Eldridge, J., concur.*

DECIDED APRIL 11, 2003.

*Adam R. Gaslowitz & Associates, Adam R. Gaslowitz, Walter Hamberg III, Brian M. Deutsch*, for appellants.

*Barron & Barron, George L. Barron, Jr., Garlan B. Furin*, for appellee.