## A03A1644. CRAIG v. HOLSEY.
(590 SE2d 742)

ADAMS, Judge.

Rodney Leroy Craig appeals a verdict and judgment against him arising out of a car accident he caused while under the influence of drugs and alcohol. He contends the trial court failed to enforce a settlement agreement, that the court made two evidentiary errors, and that the award of punitive damages was unconstitutional.

Construed in favor of the verdict, the facts show that on August 9, 1998, while he was on probation, Craig smoked two marijuana cigarettes, drank six beers and eight ounces of straight gin, then crashed his car into the back of a car driven by Tamika Holsey, pushing her car into the lane of oncoming traffic. Craig also fled the scene. Craig's blood alcohol level was 0.169 three hours after the accident. He eventually pled guilty to leaving the scene of an accident, following too closely, and driving under the influence. His sentence included 30 months of probation. Holsey sustained injuries in the accident. Following trial, the jury returned a verdict of $8,801.40 in actual and compensatory damages and, following a separate hearing, $200,000 in punitive damages.

1. We first address whether Craig filed a timely notice of appeal.

Judgment was entered on March 15, 2002. On April 8, Craig filed a timely motion for new trial, but the trial court dismissed the motion as void on September 5, 2002, because of Craig's failure to obtain or serve a rule nisi, as required by OCGA § 5-5-44. On September 11, 2002, Craig filed a notice of appeal from the verdict and judgment and the September 5 order dismissing his motion for new trial. Holsey has now filed a motion to dismiss the appeal, contending that this Court does not have jurisdiction to consider it because a void motion for new trial does not extend the time for filing a notice of appeal.

Craig's motion for new trial was void. OCGA § 5-5-44 provides that "[i]n all motions for a new trial the opposite party shall be served with a copy of the rule nisi unless such copy is waived." Failure to perfect service of the motion for new trial in accordance with OCGA § 5-5-44 renders the motion void. See *Dunn v. Dunn*, 221 Ga. 368, 369 (1) (144 SE2d 758) (1965).[1]

It is true that a motion for new trial that is void because it was not timely filed does not extend the time for filing the notice of

---

[1] The Supreme Court has held that "[t]he failure to attach a rule nisi to a motion for new trial does not demand a dismissal of the motion. The trial judge in his discretion may dismiss it or continue the matter until the motion is perfected." *Stoner v. McDougall*, 235 Ga. 171, 172 (219 SE2d 138) (1975). The court in this case dismissed the motion for new trial. We find nothing in the record to suggest that the trial court abused its discretion in this regard.

appeal. *Porter v. State*, 271 Ga. 498-499 (521 SE2d 566) (1999); *Wright v. Rhodes*, 198 Ga. App. 269 (401 SE2d 35) (1990). It appears, however, that in other cases, including failure to serve a rule nisi, a timely filed motion for new trial that is dismissed as void will toll the period for filing a notice of appeal. See, e.g., *Harrison v. Harrison*, 229 Ga. 692 (1) (194 SE2d 87) (1972) (prematurely filed motion for new trial); *Gold Kist, Inc. v. Stokes*, 135 Ga. App. 382 (2) (a) (217 SE2d 352) (1975), rev'd on other grounds, 235 Ga. 643 (221 SE2d 49) (1975) (failure to attach rule nisi). In these cases, an order dismissing the motion for new trial is considered a disposition of the motion pursuant to OCGA § 5-6-38 (a), and it commences the running of the 30-day period for filing a notice of appeal. *Heard v. State*, 274 Ga. 196 (1) (552 SE2d 818) (2001); see also *Johnson v. State*, 246 Ga. App. 239 (539 SE2d 914) (2000). Moreover, the allegations of error raised in the void motion for new trial may be reviewed on appeal. *Gold Kist*, 235 Ga. 643; *Checker Cab Co. v. Fedor*, 134 Ga. App. 28, 29 (213 SE2d 485) (1975). Hence, the appeal is properly before us and will be considered on its merits. The motion to dismiss is denied.

2. Craig contends the trial court erred by failing to enforce a settlement agreement. The undisputed evidence shows that on November 8, 2001, Holsey made a written, time-limited offer to settle the case for the policy limits of $15,000. The offer explicitly stated that Craig was required to deliver payment within five days from delivery of the letter, which was sent by facsimile on Friday, November 9, 2001, and delivered on Monday, November 12, via Federal Express. It is undisputed that Craig failed to make a payment by Friday, November 16. Craig contends that on Monday, November 12, his attorney had a telephone call with one of Holsey's attorneys, in which it was agreed that the case was settled and that the deadline would not be enforced. Holsey denies that the deadline was waived. None of the associated writings indicate that the deadline was waived.

Craig moved to enforce the settlement agreement and a hearing was held. The parties submitted affidavits on the issue and argued based on the affidavits. The court did not hear live testimony. The court made clear that, based solely on the affidavits, it could not resolve who was telling the truth about the telephone conversation, and therefore it held that there was insufficient evidence to contradict the fact that the time-limited offer was not accepted by full payment within the deadline. It therefore denied Craig's motion.

"Because the trial court decided this case on motion and not by bench trial, the issues raised in this appeal are analogous to those in a motion for summary judgment. Our review is de novo." (Citation omitted.) *Walls v. Walls*, 260 Ga. App. 673, 675 (580 SE2d 564) (2003). Compare *Griffin v. Wallace*, 260 Ga. App. 857 (581 SE2d 375) (2003) (when the trial court is called upon to act as the finder of fact

regarding a motion to enforce a settlement, the clearly erroneous standard is used).

We find no error. Whether the parties agreed to waive the deadline was disputed, and therefore the trial court correctly denied the motion. *Scott v. Carter*, 239 Ga. App. 870 (521 SE2d 835) (1999), is not controlling. In that case, the existence of an agreement was established by letters between counsel for both parties, who had authority to settle, confirming that the case had been settled. Here, there were no writings confirming that the deadline had been waived.

3. Craig contends the court abused its discretion by allowing Holsey to cross-examine him regarding the details of a prior criminal conviction. Craig notes that although prior felony convictions are admissible for impeachment purposes, the evidence admitted must be limited to certified copies of the prior convictions. See *Willett v. Russell M. Stookey, P.C.*, 256 Ga. App. 403 (568 SE2d 520) (2002). Craig does not contend that the conviction itself was inadmissible. See *Moore v. Thompson*, 255 Ga. 236 (336 SE2d 749) (1985) (evidence of defendant's prior and subsequent guilty pleas to driving under the influence admissible on question of punitive damages).

But the questioning at issue occurred during the punitive damages phase of the trial. Punitive damages are recoverable only where "it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." OCGA § 51-12-5.1 (b). During the punitive damages phase of the trial, the court may receive evidence that "is relevant to a decision regarding what amount of damages will be sufficient to deter, penalize, or punish the defendant in light of the circumstances of the case." OCGA § 51-12-5.1 (d) (2). The award authorized by this statute for the tortfeasor's intent, motive, or attitude as described above "has been construed as that which is related to the tort." *Carter v. Spells*, 229 Ga. App. 441, 442 (494 SE2d 279) (1997). "It is this orientation of defendant in connection with the act at issue [that] aggravates the act's wrongfulness." Id. at 442-443.

But that does not mean that the question of the defendant's state of mind must be examined "solely by focusing on the incident in issue." *Moore*, 255 Ga. at 237. And the general rule still holds: "trial judges may exercise discretion in excluding relevant evidence if its probative value is substantially outweighed by the risk that its admission will confuse the issue, mislead the jury, or create substantial danger of undue prejudice." *Webster v. Boyett*, 269 Ga. 191, 195 (496 SE2d 459) (1998).

Craig contends that the court should not have allowed cross-examination into the details of his prior criminal conviction and probation for possession of a controlled substance, specifically, the fact that the controlled substance was crack cocaine intended for his personal use. But the evidence offered was relevant to the issue of whether on the day of the accident, Craig's actions showed wilful misconduct, wantonness, or that entire want of care that would raise the presumption of conscious indifference to consequences.

The evidence was introduced together with other evidence regarding Craig's past drug use such as: that Craig violated the terms of his probation by drinking and using drugs on the day of the accident; that he smoked marijuana that day because he "just felt like it"; that he often smoked marijuana while he was on probation; that he sometimes drove a car after smoking marijuana; and that he has continued to smoke marijuana since the accident. The evidence taken as a whole suggests that Craig was disposed to wilfully violate the law and the terms of his probation by using illegal drugs, that he consciously drove under the influence of drugs, and that he did not even change this wanton conduct after the accident.[2] See *Langlois v. Wolford*, 246 Ga. App. 209, 214 (2) (d) (539 SE2d 565) (2000) (prior similar acts of drunk driving and intoxication are relevant and material as evidence of aggravated conduct for punitive damages). We find no abuse of discretion in the trial court's decision to allow the evidence.

4. Craig also contends that the court abused its discretion when it allowed testimony during the first phase of the trial that he used marijuana on occasion subsequent to the accident and that he was an "occasional" pot smoker. The court allowed cross-examination for the purpose of showing that Craig violated his probation. As shown above, Craig admitted in the punitive damages phase of the trial that he sometimes drove under the influence of drugs.

In opening argument, Craig's attorney said,

> I guess, as far as, you know, whether or not to punish him, or to award money damages against him to keep him from doing this in the future, I think it's important to note that this thing happened back in 1998, you know, Mr. Craig's not had any further DUI's, *or any incidents like this*, and so . . . apparently the plea helped *to deter him from future acts such as this*, and I think that should be considered by you, in

---

[2] "[W]anton conduct is that which is so reckless or so charged with indifference to the consequences as to be the equivalent in spirit to actual intent." (Citation and punctuation omitted.) *Muller v. English*, 221 Ga. App. 672, 676 (2) (c) (472 SE2d 448) (1996).

determining whether or not he needs to be punished or deterred further.

(Emphasis supplied.) Given this opening, we cannot say that the trial court abused its discretion by allowing the testimony. The comments opened the door for evidence that Craig had not been deterred by his criminal conviction from smoking marijuana and driving after doing so. See *Thomas v. State*, 247 Ga. App. 798, 799 (1) (545 SE2d 354) (2001) (one cannot complain of a ruling when one's own conduct aided in causing the ruling).

5. Finally, Craig contends the award of punitive damages was grossly excessive so as to be unconstitutional under the Due Process Clause of the Fourteenth Amendment of the United States Constitution. We review such claims de novo. *Time Warner Entertainment Co. v. Six Flags Over Ga.*, 254 Ga. App. 598 (563 SE2d 178) (2002). The determination is based on three guideposts: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *State Farm &c. Ins. Co. v. Campbell*, 538 U. S. 408 (II) (123 SC 1513, 155 LE2d 585) (2003). "Exacting appellate review ensures that an award of punitive damages is based upon an application of law, rather than a decisionmaker's caprice." (Citations and punctuation omitted.) Id. at 1520-1521.

(a) The most important indicium of the reasonableness of a punitive damage award — the degree of reprehensibility of the defendant's conduct — requires that we consider whether:

the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*State Farm*, 123 SC at 1521 (III) (A); *BMW of North America v. Gore*, 517 U. S. 559, 575, n. 23 (116 SC 1589, 134 LE2d 809) (1996) ("The flagrancy of the misconduct is thought to be the primary consideration in determining the amount of punitive damages.") (citation and punctuation omitted).

Of these five factors, three are present here: (1) Craig caused physical harm; (2) he acted in reckless disregard of the safety of others by driving after drinking and using drugs and by fleeing the

scene; and (3) he has driven repeatedly after drinking or smoking marijuana. Adding to Craig's reckless disregard is the fact that he admitted that he was aware of the deleterious combined effect of drinking and smoking marijuana on one's ability to drive, that he did so anyway just because he felt like it, and that his drinking and drug use were a violation of probation. Although there is no evidence that Craig acted with malice or with knowledge of any vulnerability of Holsey's,[3] Craig's conduct exhibited a high degree of reprehensibility.

(b) The second guidepost is the disparity between the actual *or potential harm* suffered by the plaintiff and the punitive damages award. *Gore*, 517 U. S. at 580. Here, Holsey could have died as a result of Craig's driving under the influence. Thus, the potential harm was much greater than the actual. See *Hosp. Auth. of Gwinnett County v. Jones*, 261 Ga. 613, 615 (1) (409 SE2d 501) (1991) (punitive damages award consistent with potential ensuing injuries). In Georgia, awards for wrongful death can easily approach or exceed the amount of punitive damages awarded in the present case. See, e.g., *Stewart v. Med. Center of Central Ga.*, 239 Ga. App. 90 (520 SE2d 747) (1999) (jury awarded $127,679.73 for wrongful death); *Williams v. Worsley*, 235 Ga. App. 806 (510 SE2d 46) (1998) (a jury awarded $750,000 for full value of life); *Hosp. Auth. of Hall County &c. v. Adams*, 110 Ga. App. 848 (140 SE2d 139) (1964) ($115,000 award for wrongful death of 47-year-old). Accordingly, we find no disparity between the potential harm suffered by Holsey and the $200,000 punitive damage award.

(c) The third guidepost is "the disparity between the punitive damages award and the 'civil penalties authorized or imposed in comparable cases.' [Cit.]" *State Farm*, 123 SC at 1526 (III) (C). But Georgia law provides for only modest civil penalties for Craig's three specific crimes.[4] We find this guidepost less important than the first two based on the nature of Craig's reprehensible conduct.

Furthermore, the guideposts are based on the principle "that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose." *Gore*, 517 U. S. at 574 (III). OCGA § 51-12-5.1 itself

---

[3] One court has reasoned,
> [t]he court in *Campbell* and *Gore* stated the third reprehensibility subfactor in terms of *financial* vulnerability, but that characterization undoubtedly reflects the origins of those opinions in torts of an essentially economic nature. In other cases, such as this one, it makes sense to ask whether and to what extent the defendant took advantage of a known vulnerability on the part of the victim to the conduct triggering the award of punitive damages, or to the resulting harm.

*Henley v. Philip Morris*, 112 Cal. App.4th 198, 245-246 (VIII) (B) (5 Cal. Rptr.3d 42) (2003).

[4] The penalty for a first offense of leaving the scene of an accident involving injury is a fine that cannot exceed $1,000. OCGA § 40-6-270 (a). The penalty for a first offense of driving under the influence is the same. OCGA § 40-6-391 (c) (1) (A).

informs the public that the $250,000 cap on punitive damages in this state does not apply to torts where the defendant acted or failed to act while under the influence of alcohol, drugs, or other judgment-altering substances. OCGA § 51-12-5.1 (f). This legislation informs the public that this type of conduct is subject to large penalties.

In summary, the award of punitive damages in this case was not grossly excessive so as to be unconstitutional under the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

*Judgment affirmed. Johnson, P. J., Blackburn, P. J., Eldridge, Barnes and Mikell, JJ., concur. Andrews, P. J., concurs in part and dissents in part.*

ANDREWS, Presiding Judge, concurring in part and dissenting in part.

Because I believe the punitive damages awarded in this case were excessive, I respectfully dissent.

> Despite the broad discretion that States possess with respect to the imposition of criminal penalties and punitive damages, the Due Process Clause of the Fourteenth Amendment to the Federal Constitution imposes substantive limits on that discretion. To the extent an award is grossly excessive, it furthers no legitimate purpose and constitutes an arbitrary deprivation of property.

(Citations and punctuation omitted.) *State Farm &c. Ins. Co. v. Campbell,* 538 U. S. 408 (123 SC 1513, 1519-1520, 155 LE2d 585) (2003).

As stated by the majority, courts reviewing punitive damage awards are to consider three guideposts: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *State Farm,* supra at 1520.

"The most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." (Citation and punctuation omitted.) *State Farm,* supra at 1521. In determining the reprehensibility of the defendant's actions, courts must consider whether:

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved

repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

Id.

In the instant case, only the first two of these five factors were present. There was no evidence that the victim was financially vulnerable. In addition, this was an isolated incident; Craig had no previous arrests for DUI. And, the harm was the result of an accident, not intentional malice, trickery, or deceit.

Looking at the second *Gore* guidepost, we note that the Supreme Court has "been reluctant to identify concrete constitutional limits on the ratio between harm, or potential harm, to the plaintiff and the punitive damages award." *State Farm*, supra at 1524. The Court has stated, however, that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process" and "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." Id.

In this case, compensatory damages were $8,801 and the punitive damages were $200,000; thus, the punitive damages awarded were over 22 times the amount of compensatory damages.

Moreover, the majority seeks to negate the disparity between the two awards by leaping to the conclusion that Holsey could have died in this accident and cites to compensatory damages in *wrongful death* cases as analogous to the potential damages in this case. Although driving under the influence of alcohol and drugs is always dangerous and there is always a chance that a traffic accident can be fatal, this analogy is not helpful and the majority cites to no authority on point which would support this assumption. The only authority cited is *Hosp. Auth. of Gwinnett County v. Jones*, 261 Ga. 613 (409 SE2d 501) (1991), which was decided before the recent United States Supreme Court holdings and specifically rejects "the notion that punitive damages must necessarily bear some relationship to the *actual* damages awarded by the jury." Id. at 614.

In the case before us, the evidence was that there were two people in the car that Craig hit from behind. There was no evidence at trial that the driver suffered any injuries and Holsey, the passenger, had back and neck strain which appeared to have resolved itself at the time of trial. This was not a potentially fatal accident nor is it a potential wrongful death case.

As to the third factor, the disparity between the punitive damages and any penalties provided for in comparable cases, the majority acknowledges that there is a great disparity here and therefore, the third guidepost's requirement is not met.

When an appellant brings a due process claim under the Fourteenth Amendment, this Court is required to conduct a de novo review of the punitive damages awarded and reverse an award "imposed indiscriminately" which constitutes an "arbitrary deprivation of property." *State Farm*, supra at 1520. In this case, of the three guideposts set out by *Gore*, the last two are not met, and only two of the five factors to be considered are present in the first one. Accordingly, the punitive damages awarded in this case were excessive and the judgment should be reversed.

DECIDED NOVEMBER 25, 2003 —

*Mabry & McClelland, James T. Budd, Brian W. Sprinkle*, for appellant.

*Mathis & Adams, Charles A. Mathis, Jr., Andrew B. Koplan, Aileen R. Page, Cash, Krugler & Fredericks, David N. Krugler*, for appellee.