### A05A0156. JONES v. FRICKEY.
(618 SE2d 29)

ELLINGTON, Judge.

After a hearing, the Superior Court of Paulding County granted the motion to enforce a settlement filed by Rocky Frickey in Keith Jones' personal injury action. Jones appeals, contending the trial court erred in concluding there was an enforceable agreement to settle the case. For the following reasons, we reverse.

The following facts are undisputed. On July 4, 2001, Frickey, who carried a $100,000 automobile liability policy with State Farm Insurance Company, caused a collision with Jones' car. Jones sustained catastrophic injuries, resulting in medical expenses well over $100,000. Early in the process of negotiating Jones' claim, State Farm conceded

---

[16] See *Ellison*, supra at 901 (3) (b), n. 7.
[17] (Footnotes omitted.) Id. at 904 (6).

that Frickey was liable to Jones and that the medical expenses from Jones' "horrendous" injuries exceeded the limits of Frickey's policy. A State Farm claim representative communicated to Jones' lawyer its intention to tender the policy limit of $100,000 upon receipt of some documentation of Jones' medical expenses. In letters sent in June and August 2002 and in April 2003, State Farm reiterated its request for documentation of Jones' special damages and restated its intention to settle the claim by tendering the policy limit. In one of those letters, the claim representative stated, "I do not wish to 'sit' on your client's money."

With the deadline for filing a complaint on Jones' claim just two weeks away, Jones' lawyer sent State Farm a letter on June 18, 2003, formally demanding the policy limit and, for the first time, providing copies of medical bills totaling more than $100,000. The letter stated that if a written response was not received within five days from the date of the letter then the offer to settle would be "automatically withdrawn according to its terms." State Farm responded in writing, sent by mail and by facsimile, on June 25, 2003, seven days after the date of the letter, agreeing to the demand. State Farm's response stated,

> we are willing to tender our full policy limits of $100,000.00. . . . We stand ready to issue payment upon receipt of the fully executed release enclosed. Obviously, payment is complicated by what appears to be a Grady Hospital lien as well as potential liens by [Jones'] health carrier. Please advise me of the status of these liens.

Jones filed his complaint on June 27, 2003. Ten days later, on July 7, 2003, Jones' lawyer sent State Farm a letter reporting on the status of the liens. On October 9, 2003, Jones' lawyer sent State Farm a letter formally withdrawing the June 18 settlement demand, saying that State Farm

> has refused to tender the policy limits available without putting certain conditions on the settlement, including suggesting that [Jones] execute a release *prior to the receipt of settlement funds*, effectively settling all claims against [Frickey]. State Farm has indicated they would not tender the settlement check until all potential lien[s] or claims for reimbursement have been resolved with insurance companies that have provided benefits to [Jones].

Jones' lawyer concluded, "We feel State Farm has dealt in bad faith." On October 20, 2003, State Farm sent a written offer to settle for the

policy limit, conditioned on "the standard hold harmless language as to any ERISA issues or other liens in our release." Receiving no response, on November 18, 2003, State Farm sent a check for $100,000, a general release for Jones to execute, and a draft dismissal with prejudice. Jones' lawyer returned the check and rejected the offer. On December 2, 2003, State Farm again sent a written offer to settle for the policy limit, which Jones refused to accept.

On December 29, 2003, Frickey filed a motion to enforce a settlement. The trial court issued a rule nisi setting down Frickey's motion for oral argument; the trial court did not notify the parties that it would conduct a bench trial pursuant to OCGA § 9-11-52. At the hearing on Frickey's motion, the trial court received the testimony of the State Farm claims adjuster who testified regarding a telephone conversation she had with Jones' lawyer on June 10, 2003. In that conversation, Jones' lawyer verbally reported that she was working to obtain Jones' medical records. The claims adjuster also testified that State Farm received Jones' June 18, 2003 demand on June 23. Jones submitted his lawyer's affidavit which stated that there was never a meeting of the minds as to all material terms of the settlement. In particular, the lawyer stated that in the July 7, 2003 letter, which referenced her efforts to resolve the medical liens, she did not intend "to accept any sort of counter-offer or to indicate that we had some sort of agreement settling the case." The lawyer stated that she did not work to resolve potential liens against Jones' right of recovery "for the purpose of settling this case," but instead to benefit Jones "by maximizing his recovery and limiting his exposure to liability." The trial court granted Frickey's motion to enforce a settlement without explanation.

"Because the trial court decided this case on motion and not by bench trial, the issues raised in this appeal are analogous to those in a motion for summary judgment. Our review is de novo." (Citation and punctuation omitted.) *Craig v. Holsey*, 264 Ga. App. 344, 345 (2) (590 SE2d 742) (2003).[1] Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c).

---

[1] Cf. *Griffin v. Wallace*, 260 Ga. App. 857, 857-858 (581 SE2d 375) (2003) (when a trial court conducts a bench trial on a motion to enforce a settlement pursuant to OCGA § 9-11-52 (a), and acts as the finder of fact, the appellate court construes the evidence to uphold the trial court's judgment and does not set aside the trial court's findings of fact unless clearly erroneous); *Morrow v. Vineville United Methodist Church*, 227 Ga. App. 313, 316-317 (2) (489 SE2d 310) (1997) (accord).

Jones contends the parties did not agree to a settlement because State Farm did not accept Jones' June 18, 2003 demand within the time stipulated in the demand letter. Because the demand expired on its own terms after five days, Jones contends, State Farm's purported acceptance on the seventh day constituted a counteroffer rather than an acceptance. In the alternative, Jones contends that the parties did not agree to a settlement because State Farm's purported acceptance contained additional terms and conditions, specifically that Jones would execute a release and that Jones would resolve the hospital and ERISA liens, and thus constituted a counteroffer rather than an acceptance. Pretermitting whether State Farm's response was timely,[2] we conclude there was no enforceable agreement to settle this case.

"Where parties to litigation have entered into a definite, certain, and unambiguous mutual release of their claims, which is not denied, the trial court should make that settlement the judgment of the court, thereby terminating the litigation." (Footnote omitted.) *Carey v. Houston Oral Surgeons*, 265 Ga. App. 812, 817 (2) (595 SE2d 633) (2004). See OCGA § 15-19-5 ("Attorneys have authority to bind their clients in any action or proceeding by any agreement in relation to the cause, made in writing."); Uniform Superior Court Rule 4.12 ("Attorneys of record have apparent authority to enter into agreements on behalf of their clients in civil actions. Oral agreements, if established, are enforceable.").

> Under Georgia law, an agreement alleged to be in settlement and compromise of a pending lawsuit must meet the same requisites of formation and enforceability as any other contract. In this regard, it is well settled that an agreement between two parties will occur only when the minds of the parties meet at the same time, upon the same subject matter, and in the same sense.

(Citations and punctuation omitted.) *Wilkins v. Butler*, 187 Ga. App. 84, 85 (369 SE2d 267) (1988). Thus, "[a]n answer to an offer will not amount to an acceptance, so as to result in a contract, unless it is unconditional and identical with the terms of the offer. To constitute a contract, the offer must be accepted unequivocally and without variance of any sort." (Citations and punctuation omitted.) *Herring v. Dunning*, 213 Ga. App. 695, 698 (446 SE2d 199) (1994). As we have

---

[2] State Farm sent its response by facsimile exactly five days, excluding intermediate Saturdays and Sundays, after the date of Jones' June 18, 2003 demand. See OCGA § 1-3-1 (d) (3) ("When the period of time prescribed [for the exercise of any privilege or the discharge of any duty] is less than seven days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation.").

held, a purported acceptance of a settlement offer which imposes conditions or otherwise varies the offer will be construed as a counteroffer to the offer. Id. See also *Auto-Owners Ins. Co. v. Crawford*, 240 Ga. App. 748, 750 (1) (525 SE2d 118) (1999) (an oral settlement agreement must satisfy the same requisites of formation and enforceability as any other contract; meeting of the minds and mutual assent can be found only where the acceptance of an offer was unconditional, unequivocal, and without variance of any sort).

In this case, the undisputed evidence did not establish that State Farm responded to Jones' June 18, 2003 written offer in the manner required to constitute an acceptance.[3] Further, the evidence did not establish as a matter of law that Jones responded to State Farm's October 20, 2003 written offer, its November 18, 2003 tender, or its December 2, 2003 written offer in the manner required to constitute an acceptance. Because the undisputed evidence did not establish the existence and terms of an agreement to settle Jones' case, the trial court erred in granting Frickey's motion to enforce a settlement agreement. *Craig v. Holsey*, 264 Ga. App. at 345-346 (2); *Auto-Owners Ins. Co. v. Crawford*, 240 Ga. App. at 750 (1).

*Judgment reversed. Smith, P. J., and Adams, J., concur.*

DECIDED JUNE 21, 2005 —
RECONSIDERATION DENIED JULY 14, 2005 — ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Edenfield, Cox, Bruce & Classens, Gerald M. Edenfield, Susan W. Cox, Charles P. Aaron*, for appellant.
*Charles E. Pinkard, Jr.*, for appellee.

---

[3] Frickey contends that State Farm's references to the liens were "merely precatory," citing *Herring v. Dunning*, 213 Ga. App. at 698-700, and, therefore, did not constitute any variance from Jones' offer. In *Herring v. Dunning*, we held that defense counsel's request, in a letter accepting the plaintiff's offer to settle for the policy limit, that plaintiff's counsel confirm defense counsel's understanding that "no liens of any kind" existed in the case, was "merely precatory," that is, a mere request, and did not render the intended acceptance a counteroffer. In this case, on the other hand, it is undisputed that Jones' attorney understood that resolving the liens was an added condition to settling the case.