[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10170
Non-Argument Calendar
_____

D.C. Docket No. 5:13-cv-00443-MTT

AMANDA MALPHURS,

Plaintiff-Appellee,

versus

COOLING TOWERS SYSTEMS INC.,
JOE COATES,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(September 18, 2017)

Before ED CARNES, Chief Judge, HULL and WILSON, Circuit Judges.

PER CURIAM:

Amanda Malphurs worked at Cooling Towers Systems Inc. for about six months.  After she quit her job, she brought suit against Cooling Towers and its owner, Joe Coates, alleging that the defendants had failed to pay her for overtime she worked and that Coates had sexually harassed her throughout her employment at Cooling Towers.  A jury found for the defendants on the overtime claim and for Malphurs on the sexual harassment claims.  They challenge a number of the district court's pre- and post-trial rulings.[1]

### I.

Malphurs' complaint alleged that "[o]n numerous occasions," Coates had her work late so that he "could be alone with her and engage in . . . offensive conduct and sexual harassment toward her."  It also alleged that Coates told Malphurs that he would not pay her overtime unless "she submitted to his offensive sexual demands."  And it included numerous allegations of verbal and physical harassment.

The complaint asserted a federal claim under the Fair Labor Standards Act for failure to pay earned overtime, in violation of 29 U.S.C. § 207.  In addition, it asserted several Georgia law tort claims related to the alleged sexual harassment, including intentional infliction of emotional distress, battery, and invasion of

---

[1] Malphurs did not appeal from the judgment against her on the overtime claim, but the defendants did appeal the judgment against them on the state law claims.

2

privacy.[2]  It sought litigation expenses, including attorney's fees, under § 13-6-11 of the Georgia Code and the FLSA.

The defendants filed three pretrial motions relevant to this appeal.  First, they moved to dismiss the state law claims under Federal Rule of Civil Procedure 12(b)(1) for lack of supplemental jurisdiction.  Second, they moved for a continuance.  One of their proposed witnesses was a former Cooling Towers employee named Raye Kelley who had been charged with theft by taking for allegedly embezzling funds from Cooling Towers.  The defendants requested that the court continue the case until after Kelley pleaded guilty to the charges so that she would not invoke her Fifth Amendment privilege against self-incrimination if she was called to testify in this case.  Third, the defendants moved in limine to exclude testimony by two Cooling Towers employees, Ericca Raines and Stephanie King, who were going to testify that Coates had also harassed them. The district court denied all of those motions.

At trial Malphurs testified about a continuing pattern of harassment by Coates.  She stated that he "constantly" made comments about wanting to have sex with her and that he often said "he wanted to fuck [her] or he wanted to play with [her] titties."  Beyond verbal harassment, she also testified that he took her hand

---

[2] The complaint did not assert a claim for sexual harassment or other violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e et seq., which applies only to employers with at least fifteen full time employees, see id. § 2000e(b).  Cooling Towers had fewer than fifteen employees during the relevant time period.

3

and forced it to touch his erect penis.  She said that on "four or five" occasions he brushed his groin against her so that she would feel his erect penis on her shoulder. She said that he was "always touching [her] all the time," touching "[her] butt, [her] boobs, [her] inner thigh, [her] back, [and her] shoulders."  And she said that he squeezed her nipple and, two other times, reached up beneath her shirt and touched her bare breast.

In addition, Malphurs testified about the physical and emotional effects that Coates' conduct had on her.  She explained that she would cry almost every morning, that she felt worthless, and that she had lost her apartment and "was homeless for a while."  Her experience at Cooling Towers had caused her to suffer from depression and nightmares.  She had discussed the emotional toll her experience had taken with her mother and her sister, who were both registered nurses.  And she twice contacted a facility called River's Edge that provides free mental health services, but both times it did not have any beds available.

In addition, Raines and King testified that before Malphurs arrived Coates repeatedly made lewd comments to them and touched them without their consent. And Malphurs submitted evidence, such as Coates' W-2 tax forms, that Cooling Towers was his employer.

The jury found for Malphurs on the state law claims but not the FLSA claim, and it awarded her $50,000 in compensatory damages and $130,000 in attorney's

4

fees.  After the jury rendered that verdict, the defendants moved for judgment as a matter of law on Malphurs' intentional infliction of emotional distress claim, contending that the evidence she presented on that claim was insufficient under Georgia law.  They also moved for a new trial, contending, among other things, that the jury awarded an unreasonable amount for attorney's fees and that Malphurs' invasion of privacy claim "duplicated" her battery claim.  The district court denied both motions.

## II.

## A.

The defendants first contend that the district court lacked supplemental jurisdiction over the state law claims, and as a result the court should have dismissed those claims for lack of subject matter jurisdiction.  "We review de novo a district court's determination of whether it has subject-matter jurisdiction." Gupta v. McGahey, 709 F.3d 1062, 1064–65 (11th Cir. 2013).  28 U.S.C. § 1367(a) provides in relevant part that:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).  That "case or controversy" standard "confers supplemental jurisdiction over all state claims which arise out of a common

nucleus of operative fact with a substantial federal claim." Lucero v. Trosch, 121 F.3d 591, 597 (11th Cir. 1997).

The defendants argue that Malphurs' state law tort claims did not "arise out of a common nucleus of operative fact" with her federal claim, the FLSA overtime claim. "In deciding whether a state law claim is part of the same case or controversy as a federal issue, we look to whether the claims arise from the same facts, or involve similar occurrences, witnesses or evidence." Hudson v. Delta Air Lines, Inc., 90 F.3d 451, 455 (11th Cir. 1996). Because we ordinarily make that determination based on the parties' pleadings, Lucero, 121 F.3d at 598, we will focus our inquiry on Malphur's complaint.

The complaint alleged that Coates had her work overtime so that she would be alone with him in order to facilitate his harassment. And it alleged that she would not receive overtime payments unless she acceded to his sexual demands. Those allegations show that Malphurs' federal and state claims "involve[d] similar occurrences, witnesses [and] evidence." See Hudson, 90 F.3d at 455. Evidence of Malphurs' working overtime would be essential to her FLSA claim and would also show that Coates sought and had opportunities to harass her without witnesses. Similarly, evidence that Coates made overtime payments contingent on Malphurs' acquiescing to his advances would support both her claim that he harassed her and her claim that he did not pay her for overtime she earned. As a result, Malphurs'

6

federal and state claims "ar[o]se out of a common nucleus of operative fact," and the district court had supplemental jurisdiction over her state claims under § 1367(a). See Lucero, 121 F.3d at 597.

The defendants assert that if the district court had jurisdiction over the state claims, it should have declined to exercise jurisdiction under 28 U.S.C. § 1367(c). We review only for abuse of discretion a district court's decision to exercise its supplemental jurisdiction. See id. at 598. Under § 1367(c)(2) a district court "may decline to exercise supplemental jurisdiction" if the state claims "substantially predominate[ ] over" the federal claim. But even if they do, "courts may also consider additional factors, which include judicial economy, convenience, fairness to the parties, and whether all the claims would be expected to be tried together." Estate of Amergi ex rel. Amergi v. Palestinian Auth., 611 F.3d 1350, 1366 (11th Cir. 2010) (quotation marks omitted).

We agree with the district court's conclusion that Malphurs' state claims were "intertwined with . . . her FLSA claim." As we have already explained, evidence underlying her FLSA claim would be important to her state claims, and vice versa. Judicial economy and convenience therefore supported the district court's decision to exercise supplemental jurisdiction even if the state claims predominated over the FLSA claim. There was no abuse of discretion.

7

B.

The defendants next contend that the district court erred in denying their motion for a continuance. "We review for abuse of discretion the district court's ruling on a motion for continuance." SEC v. Levin, 849 F.3d 995, 1000 (11th Cir. 2017). "[W]e will not reverse a district court's ruling on a motion for continuance unless the ruling is arbitrary, unreasonable, and severely prejudicial." Id. at 1005. When the defendants initially moved for a continuance, the district court directed the parties to observe Kelley at a state court calendar call and determine, based on the progress of her criminal case, whether she was likely to assert her Fifth Amendment privilege if called to testify in the current case. It denied the motion for a continuance as "moot" in the interim. That decision was not "arbitrary, unreasonable, and severely prejudicial," and we will not second guess it. See id.

To the extent the defendants argue that the district court should have later granted a continuance because Kelley remained unavailable, we note that there is no indication that the defendants followed the district court's instruction to monitor Kelley's criminal court proceedings. Nor is there any indication that the defendants attempted to contact Kelley in the weeks leading up to the Malphurs trial to gauge whether she was likely to invoke her Fifth Amendment privilege. And the defendants did not subpoena Kelley to appear at trial. The defendants'

8

failure to follow up on their motion, despite the district court's instruction to do so, undercuts any argument that the court should have revisited the motion later.

## C.

The defendants also contend that the district court erred in denying their motion in limine to exclude under Federal Rule of Evidence 404 Raines' and King's testimony. "We review the district court's legal decision to apply a particular rule of evidence de novo but its decision to admit or exclude particular evidence under that rule for an abuse of discretion." Schafer v. Time, Inc., 142 F.3d 1361, 1370 (11th Cir. 1998).

Rule 404(a) provides that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a). But when a defendant's character is "an element of a crime, claim, or defense" the Rule 404(a) bar does not apply to evidence relevant to that element. See id. advisory committee note. "When a person's character or character trait is an essential element of a charge, claim, or defense, the character or trait may . . . be proved by relevant specific instances of the person's conduct." Fed. R. Evid. 405(b).

One of Malphurs' claims was state law negligent retention, asserted against Cooling Towers in its capacity as Coates' employer. In Georgia "to sustain a claim for negligent hiring and retention, a claimant must show that the employer knew or

9

should have known of the employee's propensity to engage in the conduct which caused the plaintiff's injury." Tecumseh Prods. Co. v. Rigdon, 552 S.E.2d 910, 912 (Ga. Ct. App. 2001). That rule requires the plaintiff to "produce some evidence of incidents similar to the behavior that was the cause of the injury at issue." Hardison v. Enter. Rent-A-Car, 771 S.E.2d 402, 404 (Ga. Ct. App. 2015). As a result, Coates' prior wrongful acts were an "essential element" of the claim against Cooling Towers, and Raines' and King's testimony about specific instances of Coates' conduct was admissible.[3]

## D.

Turning to the post-trial motions, the defendants contend that the district court erred in denying their motion for judgment as a matter of law as to Malphurs' intentional infliction of emotional distress claim. "We review de novo the denial of a motion for judgment as a matter of law." Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1173 (11th Cir. 2010). "[J]udgment as a matter of law is appropriate only if the facts and inferences point [so] overwhelmingly in favor of one party . . . that reasonable people could not arrive at a contrary verdict." Id. (quotation marks omitted). "In making that determination, we review all of the evidence in the record, but we must draw all reasonable inferences in favor of the nonmoving

---

[3] The defendants did not request a limiting instruction with respect to Raines' and King's testimony.

party, and . . . may not make credibility determinations or weigh the evidence." Id. (quotation marks omitted).

To sustain a claim for intentional infliction of emotional distress under Georgia law, a plaintiff must show "1) that defendant's behavior was wilful and wanton or intentionally directed to harming plaintiff; 2) that the actions of defendant were such as would naturally humiliate, embarrass, frighten, or outrage the plaintiff; 3) that conduct caused mental suffering or wounded feelings or emotional upset or distress to plaintiff." Se. Sec. Ins. Co. v. Hotle, 473 S.E.2d 256, 259–60 (Ga. Ct. App. 1996). The defendants argue that Malphurs failed to prove the second and third elements. They are wrong.

As to the second element, we have already summarized some of the verbal and physical harassment that Coates inflicted on Malphurs. A reasonable jury could find that his actions "were such as would naturally humiliate, embarrass, frighten, or outrage [Malphurs]." See id.; see also Gordon v. Frost, 388 S.E.2d 362, 366 (Ga. Ct. App. 1989) ("Once the evidence shows that reasonable persons might find the presence of extreme or outrageous conduct, the jury must find the facts and make its own characterization."). The defendants' argument to the contrary is meritless.

As to the third element, to recover for emotional distress Georgia law requires that "a plaintiff show, at the very least, that physical and/or mental

11

manifestations of that distress required her to seek medical or psychological treatment." Howerton v. Harbin Clinic, LLC, 776 S.E.2d 288, 301 (Ga. Ct. App. 2015). According to the defendants, Malphurs failed to meet that standard because "she had no medical treatment; she has not been treated by a therapist; she has not been treated by a psychiatrist; she has not been treated by a psychologist; and she has had no professional treatment whatsoever."

But Georgia law does not require that a plaintiff receive treatment, only that she "seek" treatment. See id. (emphasis added). Malphurs presented evidence that she sought professional help, including talking to her mother and sister (both registered nurses) and twice attempting to go to River's Edge. Not only did she satisfy Georgia's requirement that she "seek" help, but she also described numerous physical and emotional effects on her life, including nightmares, depression, and daily crying, and she testified that she suffered a period of homelessness as a result of Coates' harassment. That evidence was sufficient to support the jury's finding that the defendants' "conduct caused mental suffering or wounded feelings or emotional upset or distress to plaintiff." See Se. Sec. Ins., 473 S.E.2d at 259–60.

## E.

In addition, the defendants contend that their motion for a new trial was due to be granted because the jury's attorney's fees award was excessive. "We review

the district court's decision to deny a new trial for an abuse of discretion." Overseas Private Inv. Corp. v. Metro. Dade Cty., 47 F.3d 1111, 1113 (11th Cir. 1995).  Malphurs' counsel testified at trial that he calculated a reasonable hourly fee based on other cases tried in the same court as this one.  He also provided exhibits detailing the hours spent on the case and the costs incurred in the course of representing Malphurs.  The defendants, by contrast, did not present any evidence that the hourly rate was unreasonable or that the hours claimed were inflated, and they did not effectively impeach Malphurs' counsel's testimony.  Because the evidence supported the award of attorney's fees, the district court did not abuse its discretion in denying the defendants' motion for a new trial.  See id.; see also Duffy St. S.R.O., Inc. v. Mobley, 471 S.E.2d 507, 508 (Ga. 1996) ("The issue of attorney fees under . . . § 13-6-11 [of the Georgia Code] is a question for the jury . . . .").

## F.

Finally, the defendants contend that the district court erred in denying their motion for a new trial because Malphurs' invasion of privacy claim "duplicated" her battery claim.  The Supreme Court of Georgia has explained that "[h]ighly personal questions or demands by a person in authority may be regarded as an intrusion on psychological solitude or integrity and hence an invasion of privacy." Yarbray v. S. Bell Tel. & Tel. Co., 409 S.E.2d 835, 837 (Ga. 1991).  And it has

13

noted that "sexual demands" are "illustrative of the type of personal demand which might amount to an invasion of privacy." Id. at 837 n.4 (emphasis omitted). By contrast, a Georgia law battery claim turns on whether the defendant committed an "unlawful touching, that is, a touching of the plaintiff's person . . . which is offensive." Lawson v. Bloodsworth, 722 S.E.2d 358, 359 (Ga. Ct. App. 2012).

Malphurs testified that Coates, who had authority over her, demanded to know who her boyfriend was and whether she was in love with him. He also invited her to his apartment under the pretense that they would discuss her bonus, but when she refused to have sex with him, he refused to discuss the bonus anymore. And we have already detailed Coates' nearly continuous requests to have sex with Malphurs. Those "[h]ighly personal questions [and] demands," including sexual demands, supported Malphurs' invasion of privacy claim. See Yarbray, 409 S.E.2d at 837 & n.4. They did not duplicate the factual basis of her battery claim, which depended on physical contact, not spoken words. See Lawson, 722 S.E.2d at 359. As a result, Malphurs' invasion of privacy and battery claims were not duplicative. The district court's denial of the defendants' motion for a new trial was not an abuse of discretion.

**AFFIRMED.**

14